# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

HOMAIDAN AL-TURKI,

      Plaintiff,

v.

TRAVIS TRANI, individually, and in his official capacity as former Warden of Limon
      Correctional Facility;
PAULA FRANTZ, individually, and in her official capacity as Chief Medical Officer for the
      Colorado Department of Corrections;
JOAN SHOEMAKER, individually, and in her official capacity as Director of Clinical Services
      for the Colorado Department of Corrections;
DEEANN KAHLER, individually, and in her official capacity as Health Services Administrator
      for Limon Correctional Facility;
WILLIAM RUSHER, individually, and in his official capacity as Duty Officer for Limon
      Correctional Facility;
RANDY LIND, individually, and in his official capacity as Custody Control Manager for Limon
      Correctional Facility;
JOHN STIREWALT, individually, and in his official capacity as Shift Commander for Limon
      Correctional Facility;
RICHARD HOWARD, individually, and in his official capacity as Shift Commander for Limon
      Correctional Facility;
RAY BOETKER, individually, and in his official capacity as Corrections Officer for Limon
      Correctional Facility;
FNU JOHNSON, individually, and in his official capacity as Corrections Officer for Limon
      Correctional Facility;
JOSEPH BALLARD, individually, and in his official capacity as Corrections Officer for Limon
      Correctional Facility;
RICHARD SUTTCLIFFE, individually, and in his official capacity as Corrections Officer for
      Limon Correctional Facility;
ERIC KATICA, individually, and in his official capacity as Corrections Officer for Limon
      Correctional Facility;
WILLIAM NELSON, individually, and in his official capacity as Corrections Officer for Limon
      Correctional Facility;
DAVID MAGGARD, individually, and in his official capacity as Corrections Officer for Limon
      Correctional Facility;
HECTOR LOZANO, individually, and in his official capacity as Corrections Officer for Limon
      Correctional Facility;

BOB EBERLE, individually, and in his official capacity as Corrections Officer for Limon Correctional Facility;
WENDY CHATTERTON, individually, and in her official capacity as Corrections Officer for Limon Correctional Facility;
SCOTTY BUSHONG, individually, and in his official capacity as Corrections Officer for Limon Correctional Facility;
CLINT FLORY, individually, and in his official capacity as Corrections Officer for Limon Correctional Facility;
MARY SUSAN ROBINSON, RN, individually, and in her official capacity as Nurse for Limon Correctional Facility;
SHERRY JASPER, RN, individually, and in her official capacity as Nurse for Limon Correctional Facility; and
GAILEEN CROWELL, RN, individually, and in her official capacity as Nurse for Limon Correctional Facility;

Defendants.
_____

## COMPLAINT
_____

Plaintiff Homaidan Al-Turki, through his attorneys, Gail K. Johnson, James S. Brennan, and Eric K. Klein of Johnson & Brennan, PLLC, respectfully alleges the following for his Complaint:

### INTRODUCTION

1. Plaintiff Homaidan Al-Turki is a Colorado state prisoner injured because of defendants' deliberate indifference to his serious medical needs in violation of the cruel and unusual punishments clause of the Eighth Amendment to the United States Constitution. This deliberate indifference resulted in physical injury and extensive pain and suffering to Mr. Al-Turki.

2. Defendants' actions and inactions in this regard were taken under color of state law and proximately caused the deprivation of Mr. Al-Turki's federally protected rights.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202 over Plaintiff's cause of action arising under the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

4. Venue lies in the U.S. District Court for the District of Colorado because the events, acts, and omissions giving rise to Mr. Al-Turki's claim occurred within the District of Colorado. 28 U.S.C. § 1391(b)(2).

## PARTIES

5. Plaintiff Homaidan Al-Turki is, and at all times relevant to this action has been, an inmate incarcerated by the Colorado Department of Corrections ("CDOC"). At all times relevant to this action, Mr. Al-Turki was under the care and custody of the CDOC at the Limon Correctional Facility ("LCF").

6. Defendant Travis Trani was, at all relevant times, employed as the Warden of LCF. Defendant Trani is sued in his individual capacity and in his official capacity.

7. Defendant Paula Frantz was, at all relevant times, employed as the CDOC's Chief Medical Officer. Defendant Frantz is sued in her individual capacity and in her official capacity.

8. Defendant Joan Shoemaker was, at all relevant times, employed as the CDOC's Director of Clinical Services. Defendant Shoemaker is sued in her individual capacity and in her official capacity.

9. Defendant DeeAnne Kahler was, at all relevant times, employed as the Health Services Administrator at LCF. Defendant Kahler is sued in her individual capacity and her official capacity.

10. Defendant William Rusher was, at all relevant times, employed as the Duty Officer at LCF. Defendant Rusher is sued in his individual capacity and in his official capacity.

11. Defendant Randy Lind was, at all relevant times, employed as the Custody Control Manager at LCF. Defendant Lind is sued in his individual capacity and in his official capacity.

12. Defendant John Stirewalt was, at all relevant times, employed as the Swing Shift Commander at LCF on October 5, 2008. Defendant Stirewalt is sued in his individual capacity and in his official capacity.

13. Defendant Richard Howard was, at all relevant times, employed as the Graveyard Shift Commander at LCF on October 5-6, 2008. Defendant Howard is sued in his individual capacity and in his official capacity.

14. Defendant Ray Boetker was, at all relevant times, employed as a corrections officer at LCF. Defendant Boetker is sued in his individual capacity and in his official capacity.

15. Defendant FNU Johnson, was, at all relevant times, employed as a corrections officer at LCF. Defendant Johnson is sued in his individual capacity and in his official capacity.

16. Defendant Joseph Ballard was, at all relevant times, employed as a corrections officer at LCF. Defendant Ballard is sued in his individual capacity and in his official capacity.

17. Defendant Richard Suttcliffe, was, at all relevant times, employed as a corrections officer at LCF. Defendant Suttcliffe is sued in his individual capacity and in his official capacity.

18. Defendant Eric Katica, was, at all relevant times, employed as a corrections officer at LCF. Defendant Katica is sued in his individual capacity and in his official capacity.

19. Defendant William Nelson, was, at all relevant times, employed as a corrections officer at LCF.  Defendant Nelson is sued in his individual capacity and in his official capacity.

20. Defendant David Maggard was, at all relevant times, employed as a corrections officer at LCF.  Defendant Maggard is sued in his individual capacity and in his official capacity.

21. Defendant Hector Lozano was, at all relevant times, employed as a corrections officer at LCF.  Defendant Lozano is sued in his individual capacity and in his official capacity.

22. Defendant Bob Eberle was, at all relevant times, employed as a corrections officer at LCF.  Defendant Eberle is sued in his individual capacity and in his official capacity.

23. Defendant Wendy Chatterton was, at all relevant times, employed as a corrections officer at LCF.  Defendant Chatterton is sued in her individual capacity and in her official capacity.

24. Defendant Scotty Bushong was, at all relevant times, employed as a corrections officer at LCF.  Defendant Bushong is sued in his individual capacity and in his official capacity.

25. Defendant Clint Flory was, at all relevant times, employed as a corrections officer at LCF.  Defendant Flory is sued in his individual capacity and in his official capacity.

26. Defendant Mary Susan Robinson, RN, was, at all relevant times, employed as a nurse at LCF.  Defendant Robinson is sued in her individual capacity and in her official capacity.

27. Defendant Sherry Jasper, RN, was, at all relevant times, employed as a nurse at LCF.  Defendant Jasper is sued in her individual capacity and in her official capacity.

28. Defendant Gaileen Crowell, RN, was, at all relevant times, employed as a nurse at LCF.  Defendant Crowell is sued in her individual capacity and in her official capacity.

29. At all relevant times, all of the Defendants sued in both their individual and official capacities were employed by the CDOC and were acting within the scope of their official duties and their employment and under color of state law.

## FACTUAL BACKGROUND

30. On the evening of October 5, 2008, Mr. Al-Turki was incarcerated by the CDOC within his locked cell at LCF.

31. At approximately 8:35 p.m. on the evening of October 5, 2008, Mr. Al-Turki suddenly began to suffer severe pain in his left side.

32. The pain was so extreme that it caused Mr. Al-Turki to vomit repeatedly, cry, scream in agony, and collapse on the floor of his cell.

33. This pain incapacitated Mr. Al-Turki to the point that he was unable to lift himself from the floor of his cell.

34. Mr. Al-Turki had never before experienced pain so severe that it caused him to cry, scream in agony, and vomit.

35. Within 10 minutes following the onset of this agonizing pain, Mr. Al-Turki began calling for help using the call-button/intercom connecting his cell to the guard station for his living unit.

36. Using the call-button/intercom in his cell, Mr. Al-Turki repeatedly called Defendant Maggard, the corrections officer on duty at the guard station during the swing shift then underway, and repeatedly and with great urgency requested medical attention.

37. Mr. Al-Turki's cellmate, then-LCF inmate Jason Steele, also called the guard station and reported that Mr. Al-Turki was in distress and experiencing debilitating pain and vomiting.

38. Mr. Al-Turki's pain was so acute that he was unable to return to his bunk after vomiting and lay on the floor of his cell.

39. After multiple calls, Defendant Maggard responded via the intercom and informed Mr. Al-Turki that he would call a nurse.

40. Some time thereafter, Defendant Maggard contacted Mr. Al-Turki via the intercom to inform him that he had spoken with a nurse, but the nurse did not believe that Mr. Al-Turki's circumstances constituted "an emergency."

41. On information and belief, Defendant Robinson was the nurse on duty at the LCF medical clinic at the time Defendant Maggard stated that he spoke with a nurse.

42. On information and belief, Defendant Robinson refused to evaluate and treat Mr. Al-Turki for his medical emergency on October 5, 2008.

43. Mr. Al-Turki's pain continued to increase, and Mr. Al-Turki continued to vomit.

44. Mr. Steele reported Mr. Al-Turki's worsening condition to Defendant Maggard.

45. In response to Mr. Steele's report of Mr. Al-Turki's worsening condition, Defendant Maggard stated via the intercom that he had again contacted a nurse and that the nurse continued to maintain that Mr. Al-Turki's circumstances did not constitute "an emergency."

46. At this time, Mr. Al-Turki informed Defendant Maggard via the intercom that he wished to speak with the Swing Shift Commander.

47. On information and belief, Defendant Stirewalt was the Swing Shift Commander on October 5, 2008.

48. Defendant Maggard informed Mr. Al-Turki via the intercom that the Swing Shift Commander would come speak with him.

49. However, the Swing Shift Commander did not, in fact, come to see Mr. Al-Turki.

50. Defendant Lozano, one of the corrections officers assigned to Mr. Al-Turki's living unit during the October 5, 2008 swing shift, came to Mr. Al-Turki's cell and observed Mr. Al-Turki's physical and mental distress. Defendant Lozano expressed concern about Mr. Al-Turki's condition and stated that he would contact the Swing Shift Commander and "medical."

51. At approximately 9:35 p.m. on October 5, 2008, Defendant Lozano returned to Mr. Al-Turki's cell accompanied by Defendant Ballard, a corrections officer assigned to LCF's security staff during the October 5, 2008 swing shift, in the course of conducting the prison count.

52. At that time, Defendants Lozano and Ballard observed Mr. Al-Turki lying face-down on the floor of his cell, clutching his abdomen in pain.

53. Defendants Lozano and Ballard ordered Mr. Al-Turki to his feet for the prison count, but Mr. Al-Turki was in such pain that he was unable to comply with their order.

54. Mr. Al-Turki again begged Defendant Lozano for help.

55. At that time, Defendant Lozano informed Mr. Al-Turki that he had communicated his concerns about Mr. Al-Turki's condition to both the Swing Shift Commander and to "medical."

56. Defendant Lozano further informed Mr. Al-Turki that the Swing Shift Commander did not wish to see Mr. Al-Turki.

57. Defendant Lozano further informed Mr. Al-Turki that "medical" was still refusing to evaluate and treat him.

58. Defendants Lozano and Ballard advised Mr. Al-Turki to submit a "kite" or written request the next morning asking for medical attention.

59. On information and belief, Defendants Lozano and Ballard made no other efforts to obtain medical care for Mr. Al-Turki on October 5, 2008.

60. At approximately 9:45 p.m. on October 5, 2008, Mr. Al-Turki made another request to Defendant Maggard that he be permitted to speak with the Swing Shift Commander.

61. The Swing Shift Commander did not communicate with Mr. Al-Turki, however.

62. On information and belief, Defendant Maggard made no other efforts to obtain medical care for Mr. Al-Turki on October 5, 2008.

63. On information and belief, Defendants Katica and Nelson were the corrections officers assigned to serve as Emergency Responders during the October 5, 2008 swing shift.

64. On information and belief, Defendants Katica and Nelson made no efforts to obtain medical care for Mr. Al-Turki on October 5, 2008.

65. On information and belief, Defendants Boetker and Johnson were the corrections officers who served as First Responders during the October 5, 2008 swing shift.

66. On information and belief, Defendants Boetker and Johnson made no efforts to obtain medical care for Mr. Al-Turki on October 5, 2008.

67. Shortly after the 10:00 p.m. shift change to the graveyard shift on the night of October 5, 2008, Mr. Al-Turki renewed his pleas for help to the corrections officer(s) then on duty in the guard station to which his call-button/intercom was connected.

68. On information and belief, Defendants Eberle, Chatterton, Bushong, and Flory were on duty in Mr. Al-Turki's living unit during the October 5-6, 2008 graveyard shift.

69. On information and belief, Mr. Al-Turki communicated with and sought medical assistance from one or more of Defendants Eberle, Chatterton, Bushong, and Flory during the October 5-6, 2008 graveyard shift.

70. On information and belief, Defendant Suttcliffe was the corrections officer who served as a First Responder during the October 5-6, 2008 graveyard shift.

71. On information and belief, Defendant Suttcliffe made no efforts to obtain medical care for Mr. Al-Turki during the October 5-6, 2008 graveyard shift.

72. One of the October 5-6, 2008 graveyard shift corrections officers from whom Mr. Al-Turki had sought assistance responded to Mr. Al-Turki's pleas for help by advising Mr. Al-Turki that the nurse was refusing to see him.

73. On information and belief, apart from one such Defendant contacting the nurse then on call, Defendants Eberle, Chatterton, Bushong, and Flory made no other efforts to obtain medical care for Mr. Al-Turki during the October 5-6, 2008 graveyard shift.

74. On information and belief, Defendant Crowell was the on-call nurse during the October 5-6, 2008 graveyard shift.

75. On information and belief, Defendant Crowell refused to evaluate and treat Mr. Al-Turki during the October 5-6, 2008 graveyard shift.

76. Mr. Al-Turki then informed the graveyard shift corrections officer with whom he was communicating that he wished to speak with the graveyard shift commander.

77. Mr. Al-Turki's request to speak with the graveyard shift commander was ignored.

78. On information and belief, Defendant Howard was the graveyard shift commander on October 5-6, 2008.

79. On information and belief, Defendant Howard made no efforts to obtain medical care for Mr. Al-Turki during the October 5-6, 2008 graveyard shift.

80. At approximately 11:30 p.m. on October 5, 2008, Mr. Al-Turki, crying with pain and still vomiting, took four Motrin pain-relief pills that had been prescribed for him prior to the onset of his medical emergency on October 5, 2008.

81. During his medical emergency on October 5-6, 2008, Mr. Al-Turki feared that he was in the process of dying and that he was going to die that night.

82. At one point during his ordeal on October 5-6, 2008, Mr. Al-Turki asked his cellmate, Mr. Steele, to contact Mr. Al-Turki's attorneys in the event of Mr. Al-Turki's death.

83. Sometime later, Mr. Al-Turki, while lying on his stomach crying with pain and periodically vomiting, either fell asleep or lost consciousness.

84. At approximately 4:00 a.m. on the morning of October 6, 2008, Mr. Al-Turki was awakened by another inmate.

85. At this time, Mr. Al-Turki was red-faced, clutching his stomach, rocking back and forth in pain, doubled over from pain, and unable to stand upright.

86. Sometime later, Mr. Al-Turki's pain began to abate.

87. At the 6:00 a.m. shift change on October 6, 2008, Mr. Al-Turki was ordered by a corrections officer to go to the LCF medical clinic later that morning for a non-emergency checkup related to his diabetes.

88. At approximately 10:00 a.m. on October 6, 2008, Mr. Al-Turki went to the LCF medical clinic for his diabetes-related appointment.

89. While at the LCF medical clinic on the morning of October 6, 2008, Mr. Al-Turki took the opportunity to explain to the medical services provider, Dr. Anita Bloor, what had transpired the previous night and earlier that morning.

90. Dr. Bloor expressed surprise at the treatment Mr. Al-Turki had received at the hands of LCF personnel.

91. Dr. Bloor asked Mr. Al-Turki to urinate into a specimen container.

92. Mr. Al-Turki urinated as directed, passing a number of kidney stones and a quantity of blood.

93. The kidney stones physically injured Mr. Al-Turki's urinary tract as they were passed.

94. After passing the kidney stones, Mr. Al-Turki spoke with the head administrator of the LCF medical clinic and described what had transpired the previous night and earlier that morning.

95. After hearing Mr. Al-Turki's recitation of events, the head administrator of the LCF medical clinic stated that "last night was a mistake" and suggested to Mr. Al-Turki that he submit a grievance pertaining to the failure of LCF personnel to address Mr. Al-Turki's medical emergency.

96. On information and belief, Defendant Kahler was the head administrator with whom he spoke on October 6, 2008.

97. On information and belief, Defendant Rusher was the Duty Officer for LCF on October 5-6, 2008.

98. On information and belief, Defendant Rusher's duties included keeping himself apprised of medical emergencies involving LCF inmates and ensuring that such medical emergencies were handled appropriately.

99. On information and belief, Defendant Rusher failed to carry out his duties to keep himself apprised of medical emergencies involving LCF inmates and to ensure that such medical emergencies were handled appropriately.

100. On information and belief, Defendant Lind was the Custody Control Manager for LCF on October 5-6, 2008.

101. On information and belief, Defendant Lind's duties included keeping apprised of medical emergencies involving LCF inmates and ensuring that such medical emergencies were handled appropriately.

102. On information and belief, Defendant Lind failed to carry out his duties to keep himself apprised of medical emergencies involving LCF inmates and to ensure that such medical emergencies were handled appropriately.

103. On or about October 10, 2008, in reference to Mr. Al-Turki's medical emergency on October 5-6, 2008, Defendant Trani acknowledged in a letter that he wrote to Mr. Al-Turki's attorney, John M. Richilano, that "[d]ue to an oversight with Clinical Services, Mr. Al-Turki was not provided with the immediate medical attention that he should have received."

104. Defendants' actions and inactions were the proximate cause of Mr. Al-Turki's physical injuries, the extent of his physical injuries, the hours of excruciating pain associated with those physical injuries, and the resulting psychological and emotional injuries suffered by Mr. Al-Turki.

105. The policies, practices, and procedures that were designed, created, adopted, promulgated, and implemented by Defendants Trani, Frantz, Shoemaker, and Kahler pertaining to the medical needs of inmates at LCF were inadequate to address the medical emergency experienced by Mr. Al-Turki on October 5-6, 2008.

106. At all relevant times, Defendants Trani, Frantz, Shoemaker, and Kahler, either collectively or individually, were responsible for the continued operation and implementation of policies, practices, and procedures pertaining to the medical needs of inmates at LCF such as Mr. Al-Turki.

107. Mr. Al-Turki suffered physical, psychological, and emotional injuries due to Defendants' negligent, intentional, knowing, reckless, callous, and wanton disregard for the obvious medical emergency he experienced on October 5-6, 2008.

CLAIM FOR RELIEF
(42 U.S.C. § 1983—Eighth Amendment Violation:  Failure to Provide Medical Care)
(Against All Defendants)

108. Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

109. At all times relevant to the allegations in this Complaint, Defendants acted or failed to act under color of state law.

110. Defendants are persons under 42 U.S.C. § 1983.

111. Defendants Rusher, Lind, Stirewalt, Howard, Boetker, Johnson, Ballard, Sutcliffe, Katica, Nelson, Maggard, Lozano, Eberle, Chatterton, Bushong, Flory, Robinson, Jasper, and Crowell knew or should have known of Mr. Al-Turki's medical emergency and accompanying excruciating pain.  Nevertheless, with knowing, deliberate, callous, and wanton indifference to Mr. Al-Turki's Eighth Amendment right to be free from cruel and unusual punishments, these Defendants made no effort to obtain medical assistance for Mr. Al-Turki, nor to examine, treat, nor care for Mr. Al-Turki in the course of his medical emergency.

112. Defendants Trani, Frantz, Shoemaker, and Kahler failed to ensure that polices, practices, and procedures were designed, created, adopted, promulgated, and implemented at LCF that would have caused LCF staff to provide adequate medical care for Mr. Al-Turki on October 5-6, 2008.  Defendants Trani, Frantz, Shoemaker, and Kahler were responsible for the design, creation, adoption, promulgation, and implementation of policies at LCF that permitted LCF medical staff and corrections officers to fail to obtain and provide the medical attention that Mr. Al-Turki desperately needed on October 5-6, 2008.  In doing so, Defendants Trani, Frantz, Shoemaker, and Kahler acted with knowing, deliberate, callous, and wanton indifference to the likelihood that the constitutional rights of Mr. Al-Turki and other inmates in the custody of the CDOC would be violated.

113. Defendants had a custom, policy, and/or practice of acting knowingly and with deliberate indifference in denying necessary medical services to inmates at LCF, including Mr. Al-Turki.

114. The acts and/or omissions of all Defendants were conducted within the scope of their official duties and employment.

115. The acts and/or omissions of all Defendants were the legal and proximate cause of Mr. Al-Turki's injuries.

116. The acts and/or omissions of each Defendant caused Mr. Al-Turki damages in that he suffered physical injury and extreme physical and mental pain from the failure to treat his medical emergency.

117. The acts and/or omissions of each Defendant as described herein intentionally deprived Mr. Al-Turki of the securities, rights, privileges, liberties, and immunities secured by the United States Constitution, and caused him other damages.

WHEREFORE, Plaintiff respectively requests that this Court enter judgment in his favor and against the Defendants, and grant him the following relief:

a) A declaration that the acts and omissions described herein are in violation of Mr. Al-Turki's Eighth Amendment right to be free from cruel and unusual punishments;

b) Compensatory and consequential damages, including damages for physical pain, emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering, as allowed by law and in an amount to be determined at trial;

c) Punitive damages as allowed by law and in an amount to be determined at trial;

d) Attorney's fees and the costs associated with this action as allowed by law;

e) Pre- and post-judgment interest at the lawful rate; and

f) Any further relief that this Court deems just and proper, and any other relief as allowed by law.

PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Dated this 1st day of October, 2010.

        JOHNSON & BRENNAN, PLLC

        _s/ Gail K. Johnson_____
        Gail K. Johnson
        James S. Brennan
        Eric K. Klein
        1401 Walnut Street, Suite 201
        Boulder, CO  80302
        (303) 444-1885
        (866) 340-8286 (fax)
        gjohnson@johnson-brennan.com
        jbrennan@johnson-brennan.com
        eklein@johnson-brennan.com
        *Attorneys for Plaintiff Homaidan Al-Turki*

Plaintiff's address:

Homaidan Al-Turki, #132871
Limon Correctional Facility
49030 State Hwy 71
Limon, CO  80826