**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02404-WJM-CBS

HOMAIDAN AL-TURKI,

      Plaintiff,

v.

JOSEPH BALLARD, a Corrections Officer at Limon Correction Facility, in his individual capacity;
WENDY CHATTERTON, a Corrections Officer at Limon Correction Facility, in her individual capacity;
BOB EBERLE, a Corrections Officer at Limon Correction Facility, in his individual capacity;
HECTOR LOZANO, a former Corrections Officer at Limon Correction Facility, in his individual capacity;
DAVID MAGGARD, a former Corrections Officer at Limon Correction Facility, in his individual capacity;
MARY SUSAN ROBINSON, RN, a former Nurse for Limon Correctional Facility, in her individual capacity; and
JOHN STIREWALT, a former Shift Commander for Limon Correctional Facility, in his individual capacity,

      Defendants.

_____

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

_____

Plaintiff Homaidan Al-Turki ("Plaintiff") brings this case against Defendants

Joseph Ballard, Wendy Chatterton, Bob Eberle, Hector Lozano, David Maggard, Mary

Susan Robinson, RN, and John Stirewalt (collectively "Defendants") in their individual

capacities claiming a violation of his Eighth Amendment rights under 42 U.S.C. § 1983.

(Third Am. Compl. ("TAC") (ECF No. 79).)  This matter is before the Court on four

Motions for Summary Judgment ("Motions") brought by Defendants Chatterton (ECF

No. 118), Eberle (ECF No. 119), Robinson (ECF No. 124), and Ballard, Lozano,

Maggard, and Stirewalt (ECF No. 123).  For the reasons set forth below, Defendant Robinson's Motion is denied, and the other Defendants' Motions are granted.

## I.  BACKGROUND

Plaintiff is, and was during all times relevant to this litigation, an inmate housed at the Limon Correctional Facility ("LCF") in Limon, Colorado.  (TAC ¶ 5.)  Plaintiff's claim is based upon his request for medical care during the evening and night of October 5-6, 2008.  (*Id.*)  Defendant Robinson was a nurse at the LCF medical clinic on duty on October 5, 2008 from 2:00 p.m. to 10:00 p.m. (the "Swing Shift"), and was the only medical staff person on duty from 8:00 p.m. to 10:00 p.m.  (TAC ¶ 31; Robinson Dep. (ECF No. 152-4) at 25.)  Defendant Stirewalt was the Shift Commander on duty and Defendants Ballard, Lozano, and Maggard were correctional officers on duty during the Swing Shift on October 5, 2008 (collectively "Swing Shift Defendants").  (TAC ¶¶ 23, 54, 59, 65.)  Defendants Chatterton and Eberle were correctional officers on duty from 10:00 p.m. on October 5, 2008 to 6:00 a.m. on October 6, 2008 (the "Graveyard Shift").  (TAC ¶ 101.)

At approximately 8:35 p.m. on the evening of October 5, 2008, Plaintiff suddenly began to feel severe pain in his left side and abdomen.  (TAC ¶ 18.)  This pain was so severe that he collapsed, vomited, and believed that he was dying.  (TAC ¶ 19; Al-Turki Dep. (ECF No. 152-1) at 111, 118-19, 127.)  Plaintiff used the intercom in his cell to contact a correctional officer in the LCF control center.  (TAC ¶ 22.)  When Defendant Maggard returned Plaintiff's call, Plaintiff informed Defendant Maggard that he had severe pain and nausea, and requested to go to the medical center.  (TAC ¶ 23;

Maggard Dep. (ECF No. 152-2) at 8, 63, 65, 72.)  Defendant Maggard then called the medical center and reported Plaintiff's symptoms and request for medical attention to Defendant Robinson.  (TAC ¶¶ 31-34; Maggard Dep. 64-65.)  Defendant Robinson told Defendant Maggard that she would not see Plaintiff because it was too late and Plaintiff's complaint was not an emergency.  (TAC ¶¶ 35-36; Maggard Dep 64-65.)  Defendant Maggard contacted Plaintiff via the intercom to inform him of Defendant Robinson's decision, and upon Plaintiff's further request, Defendant Maggard contacted the Shift Commander, Defendant Stirewalt.  (TAC ¶¶ 44, 53-55; Maggard Dep. 65, 73-74.)

Plaintiff also reported his medical condition to Defendant Lozano, who spoke to Plaintiff through the door of Plaintiff's cell on two occasions.  (TAC ¶¶ 60-72.)  Plaintiff told Defendant Lozano that he had abdominal pain and requested medical attention.  (*Id.*; Lozano Dep. (ECF No. 152-3) at 24-25, 29.)  Defendant Lozano contacted Defendant Robinson to inform her that Plaintiff was reporting abdominal pain, and was told that Plaintiff should make a written request to be seen by medical staff the following morning.  (TAC ¶¶ 61-62, 73; Lozano Dep. 29-30.)  Defendant Lozano also contacted the Shift Commander, Defendant Stirewalt, regarding Plaintiff's complaint of pain.  (TAC ¶ 62; Lozano Dep. 30-32.)  While conducting the prisoner count with Defendant Ballard, Defendant Lozano spoke to Plaintiff a second time and Plaintiff continued to complain of pain.  (TAC ¶ 65; Al-Turki Dep. 344-47.)  After speaking to Plaintiff again, Defendant Lozano contacted Defendant Robinson a second time, and she repeated that she would not see Plaintiff.  (TAC ¶ 72-73; Lozano Dep. 33-34.)

After receiving reports from Defendants Maggard and Lozano regarding Plaintiff's complaint, Defendant Stirewalt went to the medical center to meet with Defendant Robinson regarding her refusal to see Plaintiff.  (TAC ¶ 80; Stirewalt Dep. (ECF No. 152-8) at 134-35, 157.)  Defendant Robinson informed Defendant Stirewalt that Plaintiff's condition was not an emergency and she was concerned that Plaintiff was an escape risk if transferred to an outside facility.  (Stirewalt Dep. 180; Robinson Dep. 131-32, 195-96.)  Defendants Stirewalt and Robinson discussed procedures and precautions in case Plaintiff were to be transferred to a hospital outside the LCF.  (TAC ¶ 88; Stirewalt Dep. 179-84.)

Plaintiff again used the intercom in his cell to contact an officer, who he believes was Defendant Eberle, during the Graveyard Shift in a continued attempt to request medical attention.  (TAC ¶¶ 105-06; Al-Turki Dep. 399-400.)  It is disputed whether Defendant Stirewalt informed the incoming Graveyard Shift Commander, Richard Howard, the yard sergeant, Richard Suttcliffe, and the staff duty officer, William Rusher, about Plaintiff's complaint.  (Stirewalt Dep. 182-83, 187-88, 191-94; Howard Dep. (ECF No. 152-18) at 88-89; Suttcliffe Dep. (ECF No. 153-11) at 118-19; Rusher Dep. (ECF No. 152-21) at 90-92.)  It is also disputed whether Defendant Maggard informed the incoming Graveyard Shift officers, Defendants Chatterton and Eberle, of Plaintiff's complaint.  (Maggard Dep. 90-93; Chatterton Dep. (ECF No. 153-14) at 105-07.)

Plaintiff's severe pain continued, and at approximately 11:30 p.m. or 12:00 a.m., he either lost consciousness or fell asleep.  (TAC ¶ 115 ; Al-Turki Dep. 123, 130-32.)  Plaintiff was not seen by medical staff until 10:00 a.m. the following morning, October 6, 2008, when he had a preexisting medical appointment.  (TAC ¶ 120.)  During his

4

appointment, Plaintiff was instructed to provide a urine sample and passed two kidney stones.  (TAC ¶¶ 123-24; Bloor Dep. (ECF No. 152-12) at 9-10.)

Plaintiff has brought a claim against Defendants under Section 1983 alleging violation of his Eighth Amendment right to be free from cruel and unusual punishment. Defendants filed four separate Motions for Summary Judgment, all raising similar arguments.  (ECF Nos. 118, 119, 123, 124.)  Plaintiff filed Responses in Opposition to the Motions (ECF Nos. 148-151), and Defendants filed Replies to Plaintiff's Responses (ECF Nos. 171, 172, 174, 190).

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.

*See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## III. ANALYSIS

Defendants' Motions raise four main arguments: (1) Defendants are entitled to qualified immunity because there is insufficient evidence that Defendants violated the Eighth Amendment; (2) Defendants are entitled to qualified immunity because the violated right was not clearly established; (3) Plaintiff's demand for emotional and mental damages is barred by the Prison Litigation Reform Act; and (4) Plaintiff's claim cannot support an award of punitive damages.  The Court will analyze each argument in turn, below.

## A.    Qualified Immunity

Defendants each argue that they are entitled to qualified immunity.  (ECF Nos. 118, 119, 123, 124.)  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223 (2009) (quotation omitted).  To resolve a claim of qualified immunity, a court must consider two elements: (1) whether a constitutional violation occurred, and (2) whether the violated right was "clearly established" at the time of the violation.  *Id.* at 230-31.  The Court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id*. at 236.  "Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry."  *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

For the reasons set forth below, the Court finds that Defendant Robinson is not entitled to qualified immunity, but that the remaining Defendants are so entitled because the law was not clearly established as to whether they were permitted to rely on Defendant Robinson's decisions.

    1.   <u>Eighth Amendment Violation</u>

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  (TAC ¶ 1.)  The Supreme Court has held that "[d]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," and states a cause of action under Section 1983. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal citation omitted).  A claim of deliberate indifference under the Eighth Amendment is rooted in "the government's obligation to provide medical care for those whom it is punishing by incarceration," where a prisoner cannot access medical care through any other means.  *Id.* at 103.  In such cases, "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose."  *Id.* Nevertheless, "[not] every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.

Deliberate indifference to serious medical needs can be exhibited by prison medical staff in failing to properly treat a medical condition, or "by prison guards in intentionally denying or delaying access to medical care."  *Id.* at 104-05.  Where medical staff mistreat a condition, they may avoid liability by showing their conduct was

"merely negligent . . . rather than deliberately indifferent," but where "the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role . . . he also may be liable for deliberate indifference from denying access to medical care." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

To determine if a plaintiff has stated an Eighth Amendment claim for deliberate indifference, a court must engage in "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The objective prong examines whether a medical need is "'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective prong examines the state of mind of the defendant, asking whether "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

a.   *Objective Prong*

A serious medical need that satisfies the objective prong in the Tenth Circuit is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quotation and citation omitted). Where the claimed harm is the result of a delay in receiving medical care, such a delay "only constitutes an Eighth Amendment violation where the plaintiff can

show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210.

The Tenth Circuit has held that severe pain lasting several hours as the result of a delay in treatment is a sufficiently serious medical need to satisfy the objective prong, while noting that "[c]ertainly, not every twinge of pain suffered as the result of delay in medical care is actionable." *Id.*; *see also Mata*, 427 F.3d at 754 (finding that, as in *Sealock*, "severe chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard"). The objective standard does not require proof of a permanent injury or a showing that the defendant caused the harm directly; evidence that the medical need was serious and the delay "unnecessarily prolonged appellant's pain and suffering" is sufficient. *Sealock*, 218 F.3d at 1210 n.5; 1210 ("Even if appellant failed to show that his heart was damaged by the delay, however, we believe he has shown that his need was sufficiently serious to require prompt medical attention.").

In the instant case, Plaintiff has presented evidence demonstrating that the pain he suffered was so severe that he collapsed, vomited, and believed that he was dying. (Al-Turki Dep. 111, 118-19, 127; Bloor Dep. 14 (characterizing kidney stones generally as "extremely" painful).) Plaintiff has also presented evidence that prompt medical attention can diminish the severity and duration of pain from kidney stones. (Robinson Dep. 174; Bloor Dep. 23-24.) This evidence is sufficient to permit a reasonable juror to conclude that Plaintiff's medical need—severe pain—was serious, and the delay in treatment caused prolonged, and more severe, pain than he might otherwise have experienced. Therefore, the Court finds that Plaintiff has adduced sufficient evidence

9

for a reasonable juror to find that he has satisfied the objective prong of the deliberate indifference test.

        b.    *Subjective Prong*

Once a serious medical need is established, the subjective prong of the deliberate indifference test requires an inquiry into whether each defendant had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citation omitted); *see also Self*, 439 F.3d at 1230-31.  To satisfy the subjective prong, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Once it is shown that the official "knew [the plaintiff] faced a substantial risk of harm," a claim for deliberate indifference requires a showing that the official "disregarded that risk by failing to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal citation and quotation omitted).  Thus, "prison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer*, 511 U.S. at 844-45).

The Court will separately examine the evidence supporting Plaintiff's claim against each defendant, below.

        (1)    Defendant Robinson

To demonstrate that Defendant Robinson was deliberately indifferent, Plaintiff must present sufficient evidence to show that she knew of facts from which it could be

inferred that Plaintiff suffered a serious risk of harm.  *See Farmer*, 511 U.S. at 837.

Plaintiff has presented evidence, some of it disputed, that Defendants Maggard,

Lozano, and Stirewalt all spoke to Defendant Robinson regarding Plaintiff's complaint.

The evidence shows that Defendant Maggard informed Defendant Robinson that

Plaintiff was suffering from "severe abdominal pain, nausea and wanted to know if he

could come to medical."  (Maggard Dep. 65.)  Defendant Lozano spoke to Defendant

Robinson twice and informed her that Plaintiff was suffering from "abdominal pain."

(Lozano Dep. 29, 33-34.)  Therefore, taking the evidence in the light most favorable to

Plaintiff, the evidence shows that Defendant Robinson knew that Plaintiff was

complaining repeatedly of severe pain, a fact from which it can be inferred that Plaintiff

was suffering a serious medical need and a concurrent risk of harm.

Plaintiff must also demonstrate that Defendant Robinson actually drew the

inference; that is, that she understood and appreciated the risk of harm that

accompanied Plaintiff's report of severe pain.  *See Farmer*, 511 U.S. at 837.  Plaintiff

has presented evidence that Defendant Robinson knew that severe abdominal pain

may be a symptom of several serious and potentially life-threatening conditions,

including acute appendicitis, bowel obstruction, or ileus.  (Robinson Dep. at 90, 94-96,

180.)  Defendant Robinson also knew that Plaintiff was a diabetic, and understood that

that condition made him more susceptible to certain illnesses, for some of which pain is

an initial symptom.  (Robinson Dep. 178-79.)  From this evidence, it is reasonable to

infer that Defendant Robinson understood the risk of harm accompanying Plaintiff's

report of severe abdominal pain.

11

Finally, Plaintiff must present evidence that, despite the knowledge of a serious risk to Plaintiff, Defendant Robinson disregarded that risk and failed to take reasonable measures to abate it.  *See Farmer*, 511 U.S. at 847.  It is undisputed that after the Swing Shift Defendants informed Defendant Robinson of Plaintiff's complaints, she chose not to see Plaintiff, inquire further about Plaintiff's symptoms, or make any other attempt to investigate or determine the extent of Plaintiff's symptoms.  (*See* Robinson Dep. 116-124.)  Instead, Defendant Robinson made a determination that Plaintiff's condition was not an emergency without assessment or diagnosis of his symptoms.  (*Id.*)  From the evidence presented, it is reasonable to infer that despite Defendant Robinson's knowledge that Plaintiff's complaint of pain could indicate a very serious condition, she chose not to assess Plaintiff for reasons unrelated to Plaintiff's medical condition.  (Robinson Dep. 203 ("too late"); 131-32, 195-96 ("escape risk" and not "safe" if transferred to outside facility).)  Further, Plaintiff has presented evidence that Defendant Robinson knew that she was an inmate's sole access to medical care at the time, and that Plaintiff's only option to obtain medical assistance was to request it of her.  (Robinson Dep. 173.)

In sum, Plaintiff has adduced sufficient evidence from which a reasonable trier of fact could infer that Defendant Robinson knew of Plaintiff's symptoms, and knew that those symptoms could indicate a serious medical need, but chose not to assess or even speak to Plaintiff to evaluate his condition.  The Court finds this evidence sufficient such that a reasonable juror could find the subjective component of deliberate indifference satisfied.

(2)   Defendant Maggard

In order to satisfy the subjective prong of deliberate indifference with regard to Defendant Maggard, Plaintiff must present evidence demonstrating that Defendant Maggard knew of Plaintiff's medical need and understood that Plaintiff faced a serious risk of harm.  *See Farmer*, 511 U.S. at 837.  This inquiry into an officer's state of mind includes consideration of the symptoms the prisoner displays, in order to determine whether "the symptoms [were] such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it."  *Mata*, 427 F.3d at 753.

The evidence presented indicates that Plaintiff spoke to Defendant Maggard via the intercom in his cell and complained of "severe abdominal pain and nausea," and requested to go to the medical center.  (Maggard Dep. 8, 63, 65, 72.)  Defendant Maggard did not see Plaintiff, but stated that judging by the tone of his voice, Plaintiff "seemed like he was in pain."  (*Id.* at 61, 78.)  Defendant Maggard then called the medical center and reported Plaintiff's symptoms to Defendant Robinson.  (*Id.* at 64-65.)  When Robinson told Maggard that she would not see Plaintiff, Maggard informed Plaintiff, and upon Plaintiff's further request, Maggard contacted the Shift Commander, Defendant Stirewalt.  (*Id.* at 65, 73-74.)  Upon the end of Maggard's shift, recognizing that neither Robinson nor Stirewalt had seen Plaintiff, Maggard testified that he informed the incoming Graveyard Shift officers, Defendants Chatterton and Eberle, of Plaintiff's complaint.  (*Id.* at 90-91.)  There is conflicting evidence as to whether Defendant Maggard actually conveyed this information to the officers on the Graveyard Shift.  (*See* Chatterton Dep. 105-07.)  Nevertheless, this evidence permits the

13

reasonable inference that Defendant Maggard knew of Plaintiff's need, and that he understood from Plaintiff's words, multiple pleas, and tone of voice that he was in severe pain.  The evidence also permits the inference that because Defendant Maggard responded to Plaintiff's complaint by contacting the medical center and the Shift Commander, he appreciated that the risk of harm was serious.

To satisfy the subjective prong of deliberate indifference, Plaintiff must also present evidence to show that Defendant Maggard disregarded the risk of harm to Plaintiff, and that he failed to take reasonable action to alleviate it.  *See Farmer*, 511 U.S. at 847.  The Swing Shift Defendants' Motion argues that they were entitled to rely upon Defendant Robinson's decision as a medical professional once she had informed them that Plaintiff's condition was not an emergency.  (ECF No. 123 at 15.)  Plaintiff argues in response that because Defendant Maggard knew that Defendant Robinson had refused even to assess Plaintiff's symptoms, he knew that Plaintiff's pain would persist, and should have attempted further  to encourage Defendant Robinson to assess Plaintiff.  (ECF No. 148 at 21.)  Plaintiff also argues that Defendant Maggard should have recorded the incident on the shift log and in an incident report prior to the end of his shift, in order to convey the information to the Graveyard Shift officers who might have been able to help Plaintiff.  (*Id.*)

The evidence shows that Defendant Maggard believed that after contacting Defendant Robinson and Defendant Stirewalt, he "did what [he] could do."  (Maggard Dep. 132.)  However, when asked in his deposition about numerous occasions when medical staff had refused to see a prisoner who was experiencing severe pain, Defendant Maggard stated, "Most of the time, I don't give a damn. . . . Why should I?

14

It's not my job. I did my job. It's out of my hands." (Maggard Dep. 132.) From this statement and other evidence taken in the light most favorable to Plaintiff, it is possible that a reasonable juror could conclude that Defendant Maggard disregarded Plaintiff's serious medical need and chose not to assist him further once he had contacted the medical center and the Shift Commander. Therefore, sufficient evidence exists to satisfy the subjective prong for a claim for deliberate indifference against Defendant Maggard.

(3)  Defendant Lozano

With respect to whether Defendant Lozano knew of Plaintiff's complaints, the evidence shows that Defendant Lozano went to Plaintiff's cell on two occasions and Plaintiff told Defendant Lozano that he had abdominal pain and requested medical attention. (Lozano Dep. 24-25, 29.) Defendant Lozano also stated that Defendant Maggard told him that Plaintiff had requested medical attention via the intercom. (*Id.* at 35-36.) Therefore, there is sufficient evidence to conclude that Defendant Lozano knew of Plaintiff's complaint.

Defendant Lozano's testimony indicates that he contacted Defendant Robinson to inform her that Plaintiff was reporting abdominal pain, and was told that he should make a written request to be seen by medical staff the following morning. (*Id.* at 29-30.) He testified that the nurse's refusal to see Plaintiff "really shocked me . . . [b]ecause to me it seems like she should have at least come seen him, not dismissed it." (*Id.* at 29.) Defendant Lozano then contacted the Shift Commander, Defendant Stirewalt, and after speaking to Plaintiff a second time and hearing Plaintiff continue to complain of pain, Defendant Lozano contacted Defendant Robinson again. (*Id.* at 30-

15

32.)  The evidence of Defendant Lozano's repeated attempts to obtain assistance for Plaintiff permits a reasonable inference that he recognized the risk of serious harm that attended Plaintiff's complaint of abdominal pain.

With respect to whether Defendant Lozano disregarded the risk of harm to Plaintiff, Defendant Lozano's actions demonstrate that, like Defendant Maggard, he communicated with medical staff and his Shift Commander in an attempt to assist Plaintiff.  He stated that he and Defendant Maggard "did all that we could" and relied upon Defendant Robinson's decisions.  (Lozano Dep. 36.)  However, Defendant Lozano's testimony that he was "shocked" by Defendant Robinson's failure even to assess Plaintiff's condition suggests that he believed her decision was unreasonable. (*Id.* at 29.)  Defendant Lozano also stated that he believed Defendant Robinson should have seen Plaintiff "[b]ecause it was an inmate's right," permitting an inference that he was aware that Plaintiff's rights were being violated when he was denied a medical assessment.  (*Id.*)  Plaintiff has presented evidence that Defendant Lozano did not write an incident report prior to the end of his shift to communicate Plaintiff's complaint to the incoming Graveyard Shift staff, despite an understanding that he "should have," but that he chose not to do so because "[n]obody else did."  (*Id.* at 39.)

Therefore, it is possible that a reasonable juror could find that Defendant Lozano's statements indicated that he understood and consciously disregarded a serious medical need.  This finding would suffice to satisfy the subjective prong of the deliberate indifference test.

(4)   Defendant Ballard

With respect to whether Defendant Ballard knew of Plaintiff's condition and

16

appreciated the serious risk of harm Plaintiff faced, Plaintiff has presented evidence that Defendant Ballard accompanied Defendant Lozano when Defendant Lozano went to Plaintiff's cell and informed Plaintiff that the nurse had refused to see him.  (Al-Turki Dep. 344-47.)  This evidence indicates that Defendant Ballard knew of Plaintiff's complaint, and knew that Defendant Lozano had contacted the medical staff to request assistance on Plaintiff's behalf.

However, Plaintiff has presented no evidence to permit an inference that Defendant Ballard understood the serious risk of harm to Plaintiff, or that he consciously disregarded that risk.  Defendant Ballard took no action indicating that he knew Plaintiff needed help, nor did he have any comment on or recollection of the incident when deposed.  (*See* Ballard Dep. 103.)  Plaintiff argues that when Defendant Ballard saw Plaintiff in his cell, Defendant Ballard understood that Plaintiff's complaint was serious, and then disregarded that risk when he took no action.  (ECF No. 148 at 21, 24).  Nevertheless, absent evidence from which a reasonable juror could infer such a state of mind, Plaintiff cannot prove his claim for deliberate indifference against Defendant Ballard.  Accordingly, Defendant Ballard is entitled to qualified immunity.[1]

(5)     Defendant Stirewalt

With respect to whether Defendant Stirewalt knew of and understood Plaintiff's serious risk of harm, Plaintiff has presented evidence that both Defendants Maggard and Lozano contacted Defendant Stirewalt to report that Plaintiff had complained of

---

[1] Moreover, even if Plaintiff had shown that Defendant Ballard was deliberately indifferent, he would be entitled to qualified immunity for the reasons set forth in III.A.2.b., below.

pain, and that Defendant Robinson had refused to see Plaintiff.  (Lozano Dep. 30; Maggard Dep. 8, 81, 107.)  Plaintiff's evidence also shows that Defendant Stirewalt went to the medical center to meet with Defendant Robinson regarding her refusal to see Plaintiff.  (Stirewalt Dep. 134-35, 157.)  Defendant Stirewalt testified that he and Defendant Robinson discussed procedures and precautions in case Plaintiff were to be transferred to a hospital outside the LCF.  (*Id.* at 180-84.)  From this evidence, it is reasonable to infer that Defendant Stirewalt knew of Plaintiff's complaint of pain, and that he understood that the risk to Plaintiff was serious enough to speak to Defendant Robinson about possible transport to a hospital.

Like the other Swing Shift Defendants, Defendant Stirewalt argues that he reasonably relied upon Defendant Robinson's medical opinion.  (ECF No. 123 at 15.)  Further, Defendant Stirewalt's deposition testimony indicates that he told Defendant Robinson that he would have an officer review the recordings of Plaintiff's phone calls in anticipation of a possible transport to an outside medical facility, in response to Defendant Robinson's concern that Plaintiff was an escape risk.  (Stirewalt Dep. 165, 179-80.)  However, Plaintiff presented conflicting evidence that no such review of phone calls occurred.  (*See* Suttcliffe Dep. 102-105.)

Defendant Stirewalt also testified that he informed the Graveyard Shift Commander, Richard Howard, the yard sergeant, Richard Suttcliffe, and the staff duty officer, William Rusher, about Plaintiff's complaint.  (*Id.* at 182-83, 187-88, 191-94.)  However, Richard Howard, Richard Suttcliffe, and William Rusher all testified in their depositions that Defendant Stirewalt did not inform them about Plaintiff's complaint.  (Howard Dep. 88-89; Suttcliffe Dep. 118-19; Rusher Dep. 90-92.)  Rusher's testimony

18

indicated that he made a notation on the Duty Officer Observation Form for the week clarifying that the staff duty officer should be contacted for all "significant events," in response to the fact that Defendant Stirewalt had not made him aware of Plaintiff's medical complaint until the following day.  (Rusher Dep. 92-93; ECF No. 153 Ex. 12.)

From this evidence, a reasonable juror could infer that Defendant Stirewalt did not in fact prepare for a medical transport, and did not report Plaintiff's complaint to the incoming Graveyard Shift officers or to the staff duty officer, as Rusher's notation suggested he should have done.  An inference that Defendant Stirewalt chose not to follow up with these other officers on Plaintiff's complaint, despite understanding that it carried an attendant risk of serious harm, could suffice to demonstrate conscious disregard of that risk.  Therefore, it is possible that a reasonable juror could find that Defendant Stirewalt was deliberately indifferent to Plaintiff's serious medical need.

(6)    Defendant Eberle

With respect to whether Defendant Eberle knew of Plaintiff's medical need and understood that Plaintiff faced a serious risk of harm, Plaintiff testified that he contacted an officer during the Graveyard Shift via the intercom in his cell in a continued attempt to request medical attention (Al-Turki Dep. 399-400), and Defendant Eberle testified that he had no recollection of Plaintiff's call, but if an inmate had used the intercom during that time, Eberle would have been the officer to answer it.  (Eberle Dep. 93.)  Defendant Maggard also testified that he informed the incoming Graveyard Shift officers of Plaintiff's circumstances, although he did not recall Defendant Eberle by name.  (Maggard Dep. 91-93.)  Taking this evidence in the light most favorable to Plaintiff, a reasonable juror could infer that Defendant Eberle knew of Plaintiff's complaint.

19

However, Plaintiff has presented no evidence to permit an inference that Defendant Eberle understood the serious risk of harm to Plaintiff, or that he consciously disregarded that risk.  Defendant Eberle took no action indicating that he knew of Plaintiff's medical condition or that he understood Plaintiff's condition to be serious, nor did he have any recollection of the incident when deposed.  (*See* Eberle Dep.)

Therefore, the Court finds that Plaintiff has presented insufficient evidence for a reasonable juror to conclude that Defendant Eberle was deliberately indifferent. Accordingly, Defendant Eberle is entitled to qualified immunity.[2]

(7)     Defendant Chatterton

Finally, Plaintiff must present evidence to demonstrate Defendant Chatterton's knowledge of his serious medical need and its attendant risk of harm.  Plaintiff has presented testimony by Defendant Maggard that he informed Defendant Chatterton of Plaintiff's complaint of pain, and that Defendant Chatterton stated that she and the other Graveyard Shift officer would "keep an eye on him."  (Maggard Dep. 91-93.) Defendant Chatterton disputes this, stating that she had no knowledge of Plaintiff's complaint and she would have documented any conversation with Defendant Maggard about a medical complaint.  (Chatterton Dep. 105-07, 116.)  Nevertheless, taking the evidence in the light most favorable to Plaintiff, a juror could infer that Defendant Chatterton knew of Plaintiff's medical need.

---

[2] As with Defendant Ballard, even if Plaintiff had shown that Defendant Eberle was deliberately indifferent, he would be entitled to qualified immunity for the reasons set forth in III.A.2.b., below.

20

However, as with Defendant Eberle, no further evidence has been presented to indicate that Defendant Chatterton understood that Plaintiff faced a serious risk of harm, or that she disregarded that risk.  Therefore, the Court finds that Plaintiff has presented insufficient evidence for a reasonable juror to conclude that Defendant Chatterton was deliberately indifferent.  Accordingly, Defendant Chatterton is entitled to qualified immunity.[3]

> 2.   Clearly Established Law

Finding that Plaintiff has presented sufficient evidence for a reasonable juror to conclude that Defendants Robinson, Maggard, Lozano, and Stirewalt were deliberately indifferent to his serious medical need, the Court must proceed to the second component of the analysis for qualified immunity to determine whether the law was clearly established that their actions would violate Plaintiff's rights.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted).  Further, the precedent upon which the plaintiff relies must have existed at the time of the alleged violation for it to make clear to an official at that time that his actions would violate the law.  *See Wilson v. Layne*, 526 U.S. 603, 614 (1999).

However, Plaintiffs need not show that a court had already decided the precise issue in question here.  The Supreme Court has held that "a general constitutional rule

---

[3] Even if Plaintiff had shown that Defendant Chatterton was deliberately indifferent, she would be entitled to qualified immunity for the reasons set forth in III.A.2.b., below.

already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotations and alteration omitted).  The Tenth Circuit has observed that "[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quotations omitted).

a.    *Defendant Robinson*

Defendant Robinson argues that it was not clearly established law that the harm Plaintiff suffered was substantial enough to satisfy the objective prong of the deliberate indifference test.  (ECF No. 124 at 14-15; ECF No. 190 at 16-17.)  In III.A.1.a., above, the Court reviewed the Tenth Circuit cases establishing that severe pain suffices to meet the objective prong.  *See also Mata*, 427 F.3d at 754; *Sealock*, 218 F.3d at 1210. Defendant Robinson's citation in her Response to a dissent in *Mata* (ECF No. 190 at 17) is unavailing; even if the Court were to agree with the dissenting judge that the law was not clearly established at the time the dissent was written, the law became clear after *Mata* was published in 2005.  Therefore, the Court finds the law clearly established with regard to the objective prong of the deliberate indifference analysis.

Defendant Robinson makes no argument regarding the subjective prong of the test.  Nevertheless, the Court must evaluate the state of the law with regard to her alleged actions and omissions under the circumstances in the instant case.  In *Self v.*

*Crum*, 439 F.3d 1227(10th Cir. 2006), the Tenth Circuit reviewed its analyses of deliberate indifference claims against medical staff in a correctional facility.  439 F.3d at 1231-32.  The *Self* court noted that a nurse who made "a good faith effort to diagnose and treat [the inmate's] medical condition," despite failing to diagnose a heart attack, did not satisfy the subjective component of deliberate indifference.  *Id.* (quoting *Mata*, 427 F.3d at 761); *see also Sealock*, 218 F.3d at 1208, 1211, 1212 n.7 (concluding same where a nurse misdiagnosed as flu the chest pain preceding a heart attack).  In contrast, where the evidence showed that a nurse knew of an inmate's severe chest pain but "did not simply misdiagnose [the inmate]; rather, she completely refused to assess or diagnose [her] condition at all . . . [and] completely refused to fulfill her duty as gatekeeper in a potential cardiac emergency," the Tenth Circuit held that the plaintiff had established sufficient evidence for a reasonable juror to find deliberate indifference.  *Mata*, 427 F.3d at 758-59.

The *Self* Court held that *Sealock* and *Mata* established that a claim for deliberate indifference is actionable in a situation where, among others, "a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, *e.g.*, a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell."  *Self*, 439 F.3d at 1232 (citing *Mata*, 427 F.3d at 755-59; *Sealock*, 218 F.3d at 1211-12.)

Thus, in the Tenth Circuit, it has been established since at least 2006 that a medical professional who knows of and appreciates an inmate's serious risk of medical

harm must make a good faith effort to assess him in order to escape a claim for deliberate indifference.  *Id.*  Where that effort is made, even a negligent misdiagnosis will not be considered deliberate indifference; where the effort is not made, an inference of deliberate indifference is reasonable.  *See Mata*, 427 F.3d at 758-61.  Thus, a reasonable medical professional in Defendant Robinson's position in 2008 should have known that the failure to evaluate Plaintiff's complaints of severe pain would constitute deliberate indifference.

Therefore, the Court finds that Defendant Robinson is not entitled to qualified immunity.

### b.    *Swing Shift Defendants*

The Swing Shift Defendants' Motion relies primarily on *McCracken v. Jones*, 562 F.2d 22 (10th Cir. 1977), in arguing that they referred Plaintiff's complaint to Defendant Robinson and relied upon her medical opinion, and that the law was not clearly established that such reliance would constitute a violation.  (ECF No. 123 at 17-18.)  In *McCracken*, a prisoner with a back injury brought a claim under the Eighth Amendment based upon prison officials' refusal to permit the plaintiff to leave the prison to go to his own doctor, where the officials relied on a diagnosis by two doctors who had examined the plaintiff at a hospital.  562 F.2d at 24.  The Tenth Circuit found no constitutional violation because the "defendants were entitled to rely on the diagnosis they received from the state medical authorities who examined [the] plaintiff.  If anything approaching malpractice had been indicated, the defendants did not have to defend such a charge."  *Id.*

Defendants Lozano, Maggard and Stirewalt each contacted Defendant Robinson individually, and were each informed that she would not see Plaintiff because, among other reasons, his condition was not an emergency.  (Lozano Dep. 29-31; Maggard Dep. 8, 65, 72, 118; Stirewalt Dep. 166-67.)  The Swing Shift Defendants testified that they lacked medical training beyond CPR and basic first aid, and that they lacked both the knowledge and authority to override Defendant Robinson's decision to decline to see Plaintiff.  (Lozano Dep. 26-27, 61-62; Maggard Dep. 66-67; Stirewalt Dep. 68-69, 164-65.)  Accordingly, the Swing Shift Defendants argue, *McCracken* permits their referral to and reliance on Defendant Robinson as a medical professional.  (ECF No. 123 at 18.)  If Defendant Robinson made a medical error, the Swing Shift Defendants were not liable for any potential malpractice.  *See McCracken*, 562 F.2d at 24.  In response, Plaintiff contends that, because Defendant Robinson did not even evaluate his symptoms, she did not make a diagnosis, and therefore *McCracken* is not applicable.  (ECF No. 148 at 24.)

The only Tenth Circuit case Plaintiff has proffered to support his reading of the *McCracken* rule is *Weatherford ex rel. Thompson v. Taylor*, 347 F. App'x 400 (10th Cir. 2009), along with the cases it cites from the Third, Fourth, Seventh, and Ninth Circuits. 347 F. App'x at 404.  In *Weatherford*, the Tenth Circuit held that "unreasonable reliance on the advice of a medical professional will not excuse deliberate indifference to a prisoner's serious medical needs."  *Id.*  However, *Weatherford* was an unpublished decision from 2009, and therefore it cannot have clearly established the law for officials acting in 2008.  *See id.*

Where no case of controlling authority demonstrates that the law was as Plaintiff argues, the "clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains" in order for Plaintiff to prevail on the second prong of the qualified immunity analysis.  *Cruz v. City of Laramie, Wyo.*, 239 F.3d 1183, 1187 (10th Cir. 2001).  Plaintiff cites to the cases relied upon in *Weatherford* to support the contention that where medical treatment is obviously inadequate or inferior, prison officials are not justified in relying upon it, and where no diagnosis or treatment is in fact made, there is no medical opinion upon which an official may rely.  *See Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008); *Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *Hamilton v. Endell*, 981 F.2d 1062, 1066-67 (9th Cir. 1992).  However, the Swing Shift Defendants also cite to cases of persuasive authority that do not explicitly require an investigation into the adequacy of the medical decision, or a diagnosis to have been made, in order for reliance to be reasonable.[4]  *See, e.g.*, *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995).  In the Court's view, the better-reasoned cases of persuasive authority cited by the parties support Plaintiff's contention that officials may not rely on an inadequate medical decision.  The fact remains, however, that the cases from other circuits were not of a uniform view on this issue at the time of the events at issue here.  As a consequence, Plaintiff has not demonstrated a "clearly established weight of authority"

---

[4] Among others, the Swing Shift Defendants' Reply cites to *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011), which does not reach the "clearly established" prong of qualified immunity, and quotes at length from *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009), another case without relevance to whether the law was clearly established in the instant case, as it was published after the incident in question.  (ECF No. 174 at 19-20.)

supporting a rule for an official acting in 2008 to the effect that where medical treatment is obviously inadequate or inferior, prison officials are not justified in relying upon it, and/or where no diagnosis or treatment is in fact made, there is no medical opinion upon which an official may rely.  *See Cruz*, 239 F.3d at 1187.

As Plaintiff has not pointed to a case of controlling authority that would have clarified the law in 2008 regarding a prison official's deference to a medical professional's decision not to assess a prisoner, the Court must defer to Tenth Circuit precedent establishing the more general proposition that reliance upon the judgment of a medical professional is permissible.  *See McCracken*, 562 F.2d at 24.  Therefore, the Court finds that the law was not clearly established, at the time the Swing Shift Defendants relied upon Defendant Robinson's medical decision, that their reliance would constitute a constitutional violation.  Accordingly, the Court finds that Defendants Chatterton, Eberle, Ballard, Lozano, Maggard, and Stirewalt are entitled to qualified immunity and grants their Motions for Summary Judgment.

Because the Court has found that Defendant Robinson is not entitled to qualified immunity, the Court will discuss the remainder of Defendants' arguments with regard to her.

**B.      Prison Litigation Reform Act**

Defendant Robinson's Motion argues that the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), bars Plaintiff from recovering mental or emotional damages.  (ECF No. 124 at 15-16.)  Plaintiff's Response argues that Plaintiff's pain was accompanied by "the presence of kidney stones moving through his urinary tract,"

which constitutes a physical injury under the PLRA.[5]  (ECF No. 149 at 33.)

Although the Tenth Circuit has not clarified the precise outlines of the PLRA's physical injury requirement, courts outside this circuit have held that, although a *de minimis* showing of physical injury is insufficient, an injury need not be significant to satisfy the statutory requirement.  *See Mitchell v. Horn,* 318 F.3d 523, 536 (3rd Cir. 2003); *Oliver v. Keller,* 289 F.3d 623, 627 (9th Cir. 2002); *Harris v. Garner,* 190 F.3d 1279, 1286 (11th Cir. 1999); *Liner v. Goord,* 196 F.3d 132, 135 (2d Cir. 1999); *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997); *see also Clifton v. Eubank*, 418 F. Supp. 2d 1243, 1245-46 (D. Colo. 2006) (citing the aforementioned cases in finding that pain attending a prolonged labor resulting in a stillbirth satisfied the physical injury requirement).

Pain alone may be considered a mental or emotional injury, but physical pain accompanied by physical effects necessitating medical treatment have been held to satisfy the physical injury requirement under the PLRA.  *See Mata*, 427 F.3d at 755 (finding the physical injury requirement met where the plaintiff "offered substantial evidence she suffered physical injury from her chest pains and that defendants' delay in providing proper care contributed to the injury."); *Sealock*, 218 F.3d at 1210 n.6 (finding that a delay in medical treatment that caused prolonged pain from a heart attack met

---

[5] Plaintiff also argues in his Response that Defendant Robinson has waived her defense under the PLRA because she did not raise it in her answer.  (ECF No. 149 at 32-33 (citing *Searles v. Van Bebber*, 251 F.3d 869, 874-75 (10th Cir. 2001)).)  Defendant Robinson argues in her Reply that the PLRA is not an affirmative defense subject to waiver.  (ECF No. 190 at 2-3.)  Because the Court finds that Plaintiff has sufficiently demonstrated the injury required under the PLRA to defeat summary judgment on his claim for emotional and mental damages, the Court declines to rule on whether the PLRA is an affirmative defense subject to waiver.

the physical injury requirement even where the plaintiff did not allege that defendants caused the heart attack or resulted in any lasting physical injury).

Plaintiff claims that the harm he suffered as a result of Defendant Robinson's refusal to assess him was increased and prolonged physical pain resulting from the failure to treat him for his kidney stones.  (ECF No. 149 at 22-23.)  As in *Sealock* and *Mata*, Plaintiff need not allege that Defendant Robinson caused his medical condition or that he suffered a permanent injury; the severe prolonged pain attending a physical medical condition suffices to meet the physical injury requirement under the PLRA.

Therefore, the Court finds that the PLRA does not limit Plaintiff's potential recovery.

## C.    Punitive Damages

Defendant Robinson's Motion argues that Plaintiff's request for punitive damages must fail because Plaintiff has not put forth facts demonstrating the requisite intent.  (ECF No. 124 at 16-17.)

Punitive damages are available in an action under Section 1983 where there is a finding that a defendant's conduct either (1) was "motivated by evil motive or intent," or (2) "involve[d] reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Plaintiff here does not allege that any Defendant acted with malicious intent; rather, Plaintiff argues that Defendants' actions and omissions constituting deliberate indifference to his serious medical needs were committed with reckless intent.  The intent requirement for a deliberate indifference claim under the Eighth Amendment is equivalent to the subjective recklessness

standard required under criminal law or in a defamation action. *Farmer*, 511 U.S. at 839-40. These standards, all requiring a knowledge component and an act or omission exhibiting conscious disregard, are analogous to the "reckless or callous" intent permitting an award for punitive damages.

Taking all facts in Plaintiff's favor, the Court found sufficient evidence that Defendant Robinson had the intent required for a claim for deliberate indifference, *supra* at III.A.1.b.(1); therefore, the Court holds that a reasonable juror could consider the same evidence to conclude that Defendant Robinson acted with "reckless or callous indifference" to Plaintiff's Eighth Amendment rights. *Smith*, 461 U.S. at 56. Accordingly, the Court declines to dismiss Plaintiff's request for punitive damages as to Defendant Robinson.

## IV.  CONCLUSION

In accordance with the foregoing, the Court hereby ORDERS as follows:

1.  The Motions for Summary Judgment by Defendants Chatterton, Eberle, Ballard, Lozano, Maggard, and Stirewalt (ECF Nos. 118, 119, 123) are GRANTED;

2.  Defendants Chatterton, Eberle, Ballard, Lozano, Maggard, and Stirewalt are DISMISSED WITH PREJUDICE and shall be removed from the caption in all future filings;

3.  Defendant Robinson's Motion for Summary Judgment (ECF No. 124) is DENIED; and

4.  This action remains pending and shall proceed to trial as to Defendant Robinson.

Dated this 14th day of February, 2013.

BY THE COURT:

_____
William J. Martinez
United States District Judge