**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02404-WJM-CBS

HOMAIDAN AL-TURKI,

    Plaintiff,

v.

MARY SUSAN ROBINSON, RN,  individually, and in her official capacity as Nurse for Limon Correctional Facility,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO LIMIT EXPERT TESTIMONY BY ROBERT B. GREIFINGER, M.D.**

---

    Plaintiff Homaidan Al-Turki ("Plaintiff") brings this case against Defendant Mary Susan Robinson, RN ("Defendant") in her individual capacity claiming a violation of his Eighth Amendment rights under 42 U.S.C. § 1983.  (Third Am. Compl. ("TAC") (ECF No. 79).)  This matter is before the Court on a Motion to Limit Expert Testimony by Robert B. Greifinger, M.D. pursuant to Federal Rule of Evidence 702 ("Motion"), filed by former Defendants Joseph Ballard, Hector Lozano, David Maggard, and John Stirewalt.[1]  (ECF No. 133.)  Defendant subsequently filed a Joinder in the Motion ("Joinder").  (ECF No. 136.)  Plaintiff filed a Response to the Motion (ECF No. 156) and a separate Response to Defendant's Joinder (ECF No. 165).  Defendant filed a Reply to Plaintiff's Response.  (ECF No. 189.)

---

[1] Defendants Ballard, Lozano, Maggard, and Stirewalt were dismissed from this action pursuant to the Court's Order granting their Motion for Summary Judgment.  (ECF No. 201.)

For the reasons set forth below, the Motion is granted in part and denied in part.

## I. LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

## II. ANALYSIS

To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field as to make it appear that his or her opinion would rest on a substantial foundation and would tend to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). The Motion, and Defendant's Joinder in the Motion, both challenge Dr. Greifinger's qualifications as an expert. (ECF No. 133 at 9-14; ECF No. 136 at 3-6.) The Motion also challenges the reliability of Dr. Greifinger's testimony because it does

not state the methodology or basis for his conclusions. (ECF No. 133 at 13-17.) Finally, both the Motion and Defendant's Joinder argue that Dr. Greifinger's testimony would not assist the trier of fact, and rather would invade the province of the jury as the finder of fact. (*Id*. at 17-19; ECF No. 136 at 6.) The Court addresses each of these arguments in turn below.

**A.    Qualifications**

The Motion first challenges Dr. Greifinger's qualifications regarding his proposed testimony on correctional officer procedures, and on the nature, effect, symptoms, and treatment of kidney stones. (ECF No. 133 at 9-14.) Defendant's Joinder further challenges Dr. Greifinger's qualifications as an expert on health care procedures in a Colorado Department of Corrections ("CDOC") facility, and on the standard of care applicable to nurses. (ECF No. 136 at 3-6.)

1.    Correctional Officers

The Motion argues that Dr. Greifinger is not qualified to express the opinions in his Supplemental Report (ECF No. 133 Ex. A-3) regarding the procedures applicable to former Defendants Ballard, Lozano, Maggard, and Stirewalt as correctional officers in a CDOC facility. (*Id.* at 9-12.) After the Motion was filed, the Court dismissed all of the correctional officer defendants from this action. (ECF No. 201.) Therefore, the correctional officers' argument is moot to the extent that they would have been prejudiced by Dr. Greifinger's testimony. Further, testimony from any witness regarding the standards applicable to individuals who are no longer parties to this case would be irrelevant and excludable. *See* Fed. R. Evid. 401 ("'Relevant evidence' means

evidence having any tendency to make the existence of *any fact that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence.") (emphasis added). Accordingly, irrespective of his qualifications, Dr. Greifinger may not provide expert testimony regarding the correctional officers or the procedures applicable to them, as they are no longer defendants in this case.

2. Kidney Stones

While acknowledging that Dr. Greifinger is a licensed physician, the Motion argues that he should not be permitted to offer an expert opinion regarding the nature, effect, symptoms, and treatment of kidney stones, because he is not a urologist and has no specialized training or research background on the subject. (ECF No. 133 at 12-14; ECF No. 136 at 4.) To the extent that this argument suggests that a licensed physician may not offer an expert opinion regarding any medical condition for which there exists a specialty, the Court disagrees. The Federal Rules of Evidence require only that the proposed expert witness be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Dr. Greifinger possesses an M.D. degree and a professional license, as a result of which education and status he is permitted to practice medicine. (*See* ECF No. 133 Ex. A-3.) While Dr. Greifinger will not be permitted to offer an expert opinion at trial regarding a specific medical issue without offering a basis for that opinion, as is required by Rule 702(b), the Court declines to rule that a medical doctor may not testify about a medical question falling into his general purview. Plaintiff clarifies that Dr. Greifinger's opinions regarding kidney stones are "offered from the perspective of a primary care physician," and no specialization-level

4

expertise is required to support those opinions. (ECF No. 156 at 6.) Therefore, Dr. Greifinger may offer his expert opinion as a licensed physician regarding the nature, effect, symptoms, and treatment of kidney stones as a general medical condition.

The Court's decision will not preclude Defendant from cross-examining Dr. Greifinger at trial regarding the strength of his credentials and his experience with kidney stones, in order to sway the jury regarding the weight to be accorded his testimony. *See Lovato v. Burlington N. & Santa Fe Ry. Co.*, No. CIV.A. 00–RB–2584, 2002 WL 1424599, at *4 (D. Colo. June 24, 2002) (finding expert sufficiently qualified, and stating, "Whatever shortcomings [the defendant] may perceive in [plaintiff's expert's] academic or professional background are more properly addressed in cross-examination. [The defendant's] challenge to [his] qualifications go to the weight of the witness's testimony, and not to its admissibility.").

        3.      <u>Health Care in Correctional Facilities</u>

The Motion filed by former Defendants Ballard, Lozano, Maggard, and Stirewalt acknowledges that Dr. Greifinger has experience as a medical officer, monitor, and consultant in multiple health care systems at correctional facilities, and concedes that he may be qualified to offer an expert opinion on health care provided by medical staff at correctional facilities. (ECF No. 133 at 9-11.) Nevertheless, Defendant argues in her Joinder that, because Dr. Greifinger has no experience or knowledge of CDOC health care policies and procedures in particular, or of the statutes regulating the practice of nursing in Colorado, he cannot testify as an expert regarding the standard of care applicable to Defendant as a nurse at a CDOC facility. (ECF No. 136 at 3-6.)

Dr. Greifinger has extensive experience working in correctional health care in numerous state and federal correctional systems, including as a manager and as Chief Medical Officer for the New York State Department of Correctional Services. (*See* ECF No. 133 Ex. A-3.) He has published a multitude of articles relating to health care in correctional facilities. (*Id.*) Dr. Greifinger need not have specific expertise on CDOC facilities, and on statutory regulations regarding nurses in particular, in order to offer his expert opinion based upon his experience in correctional health care in general. As with Defendant's argument regarding his lack of urology expertise, Defendant is not precluded from cross-examining Dr. Greifinger regarding his knowledge of CDOC procedures and the statutory standards applicable to nurses in Colorado. Nevertheless, specific gaps in Dr. Greifinger's general knowledge go to the weight his testimony should be accorded, not whether he is qualified to testify as an expert.

Therefore, the Court declines to disqualify Dr. Greifinger as an expert witness.

**B.     Reliability**

In determining whether the proffered testimony is reliable, the Court assesses whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology can be properly applied to the facts in issue. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). The *Daubert* Court listed four factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. *Id.* at 592-94.

Relying primarily on *Daubert* and an opinion from the Northern District of Georgia, the Motion challenges Dr. Greifinger's proposed testimony because his Supplemental Report fails to specify the methodology or standards upon which he bases his conclusions. (*See* ECF No. 133 at 13-17 (quoting from *Dukes v. Georgia*, 428 F. Supp. 2d 1298 (N.D. Ga. 2006)).) In *Dukes*, the Northern District of Georgia excluded Dr. Greifinger's testimony because, among other reasons, he failed to specify the bases for his opinions, and "[a]ccepting Dr. Greifinger's experience alone as evidence of the reliability of his statements is tantamount to disregarding the reliability prong of the *Daubert* analysis." *Dukes*, 428 F. Supp. at 1315.

This Court respectfully disagrees with the Georgia federal court. The Motion's reliance on *Daubert* ignores later Supreme Court precedent which acknowledged that, particularly in non-scientific expert testimony, a different standard may apply. In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court emphasized that the four *Daubert* factors are not a "definitive checklist or test" and that a court's inquiry into reliability must be "tied to the facts of a particular case." *Id*. at 150. In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience," rather than on the *Daubert* factors and scientific foundations. *Id.*; *see also Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2004). The Supreme Court held that a district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152.

The Court finds that Dr. Greifinger's proposed testimony does not lend itself to the *Daubert* factors as it is primarily based on his twenty years of experience in correctional health care. Based on *Kumho* and its progeny, however, this does not make the testimony inadmissible. In contrast, courts routinely admit expert testimony on prison and police procedures in Section 1983 cases. In *Zuchel v. City and County of Denver*, 997 F.2d 730 (10th Cir. 1993), the City argued that the district court had improperly permitted an expert to give his opinion about the constitutionality of police standards. *Id*. at 741. The Tenth Circuit held: "[c]ourts generally allow experts in this area to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement." *Id*. at 742.

The Court has reviewed Dr. Greifinger's expert report and deposition testimony and finds that it is sufficiently reliable so as to satisfy Rule 702's requirements. Given his significant experience and research in the area of correctional health care, the Court sees no reason to preclude his testimony about the standards of care in correctional facilities simply because it does not lend itself to application of the *Daubert* factors.

Nevertheless, when he testifies at trial, Dr. Greifinger must adhere to the requirement in Rule 702(b) that he base his opinions on sufficient facts or data. The Court notes that, for example, the Motion appropriately contested Dr. Greifinger's conclusion that the then-Defendants violated CDOC policies (*see* ECF No. 133 Ex. A-3 ¶ 52), when Dr. Greifinger admitted in his deposition that he had no personal knowledge of CDOC polices and had reviewed no written CDOC regulations or policies in coming to his conclusions. (ECF No. 133 at 16.) "If the witness is relying solely or primarily on

experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee's Note. Thus, the Court will require Dr. Greifinger to offer a basis for any expert opinion to which he testifies at trial, at the peril of its exclusion under Federal Rule of Evidence 702.

## C.     Assistance to the Finder of Fact

The Motion, and Defendant's Joinder, also seek to preclude Dr. Greifinger's testimony under the theory that it will not assist the jury. (ECF No. 133 at 17-19; ECF No. 136 at 6.) Defendant contends that Dr. Greifinger's testimony will invade the province of the jury and impede its fact-finding function. (ECF No. 136 at 6.)

Ultimately, an expert witness's testimony must assist the jury to be deemed admissible. Fed. R. Evid. 702(a). However, in doing so, an expert witness's testimony may not usurp the jury's fact-finding function. *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). The line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear; but it is well-settled that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. When adopting Rule 704, the drafters of the Federal Rules of Evidence provided some guidance as to what is permissible expert testimony:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria.

> Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural object of his bounty to formulate a rational scheme of distribution?" would be allowed.

Thus, the Court must determine whether Dr. Greifinger's proposed testimony would assist the jury or intrude on its fact-finding function.

The Motion, and Defendant's Joinder, move to preclude Dr. Greifinger's conclusion that Defendant was "deliberately indifferent" to Plaintiff's medical needs. (ECF No. 133 at 17-19; ECF No. 136 at 6.)  When Dr. Greifinger opines that Defendant was "deliberately indifferent," he is rendering an opinion on an ultimate legal issue in the case, and further invading the province of the jury insofar as the jury is tasked with assessing credibility.  Moreover, even if he avoids the term "deliberately indifferent," but his testimony nevertheless opines on Defendant's knowledge and intent, he is without personal knowledge and rendering an opinion which is outside the scope of his expertise.  Dr. Greifinger is not qualified to testify about Defendant's state of mind.

The Sixth Circuit in *Woods v. Lecureax*, 110 F.3d 1215 (6th Cir. 1997), affirmed the trial court's decision to prohibit an expert witness's use of the term "deliberate indifference."  The court observed that "whether a prison official acted with deliberate indifference depends on that official's state of mind.  Thus, by expressing the opinion that [the defendant] was deliberately indifferent, [the expert] gives the false impression that he knows the answer to this inquiry, which depends on [the defendant's] mental state." 110 F.3d at 1221.  Accordingly, Dr. Greifinger will not be permitted to use the phrase "deliberately indifferent," or express any opinion regarding Defendant's mental state.

However, the Court sees a distinction between Dr. Greifinger testifying about whether Defendant was "deliberately indifferent" (which the Court will not permit) and whether Defendant's actions were in compliance with the standards of health care in a correctional facility (which is permissible). Moreover, the Tenth Circuit has addressed a related issue and ruled that testimony from a police procedures expert was admissible, even if it was closely related to the ultimate issue to be resolved by the jury. In *Zuchel*, the Tenth Circuit held that the expert "did not give an opinion on whether Officer Spinharney's conduct was unconstitutional. Rather, he stated his belief that the conduct was inappropriate 'based on [his] understanding of generally accepted police custom and practice in Colorado and throughout the United States.'" 997 F.2d at 742-43. To the extent that Dr. Greifinger's proposed testimony merely offers an opinion on the appropriateness of the health care provided in the context of a correctional facility, like the expert testimony in *Zuchel*, Dr. Greifinger's testimony is admissible.

Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Advisory Committee's Note. "The court's 'gatekeeping' role favors admissibility of expert testimony when it is reliable and relevant, but any issue of credibility or weight of the expert's testimony belongs to the trier of fact." *Hertz v. Luzenac America, Inc.*, 2011 WL 1480523, *4 (D. Colo. April 19, 2011). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Fed. R. Evid. 702 Advisory Committee's Note.

Apart from the testimony regarding Defendant's state of mind, the Court finds that most of the arguments raised in the Motion and in Defendant's Joinder go to the weight the jury should afford Dr. Greifinger's testimony rather than the admissibility of such testimony. Nothing in this Order prevents Defendant from vigorously cross-examining Dr. Greifinger about the basis for his opinions and the conclusions he draws therefrom.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Motion to Limit Expert Testimony by Robert B. Greifinger (ECF No. 133), and Defendant's Joinder in that Motion, are GRANTED IN PART and DENIED IN PART; and

2. Dr. Greifinger may testify at trial as outlined in and consistent with this Order.

Dated this 15th day of February, 2013.

BY THE COURT:

William J. Martinez
United States District Judge