**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02404-WJM-CBS

HOMAIDAN AL-TURKI,

      Plaintiff,

v.

MARY SUSAN ROBINSON, RN,

      Defendant.

---

## ORDER ON PRETRIAL EVIDENTIARY MOTIONS

---

Plaintiff Homaidan Al-Turki ("Plaintiff") brings this case against Defendant Mary Susan Robinson, RN ("Defendant") in her individual capacity claiming a violation of his Eighth Amendment rights under 42 U.S.C. § 1983. (Third Am. Compl. ("TAC") (ECF No. 79).) Plaintiff's claim arises out of an incident occurring on the night of October 5–6, 2008 in the prison where Plaintiff was then incarcerated (the "Incident"), in which Plaintiff complained of severe pain (later discovered to result from kidney stones), and Defendant, the nurse on duty at the prison, refused to see him. (*Id.*) This case is set for a five-day jury trial commencing on Monday, November 16, 2015, with the Final Trial Preparation Conference set for October 30, 2015. (ECF No. 236.)

This matter is before the Court on three evidentiary motions: (1) Plaintiff's Motion to Exclude Certain Opinions of Defendant's Urology Expert (ECF No. 250); (2) Plaintiff's Motion *in Limine* (ECF No. 263); and (3) Defendant's Motion *in Limine* (ECF No. 265). For the reasons set forth below, all three motions are granted in part and denied in part. The Court will discuss each motion in turn.

## I.  PLAINTIFF'S MOTION TO EXCLUDE EXPERT OPINIONS

**A.    Legal Standard**

A district court must act as a "gatekeeper" in admitting or excluding expert

testimony.  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).  Admission

of expert testimony is governed by Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may
> testify thereto in the form of an opinion or otherwise, if
> (1) the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and
> methods reliably to the facts of the case.

Fed. R. Evid. 702.  The proponent of the expert testimony bears the burden of proving

the foundational requirements of Rule 702 by a preponderance of the evidence.  *United*

*States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

To qualify as an expert, the witness must possess such "knowledge, skill,

experience, training, or education" in the particular field as to make it appear that his or

her opinion would rest on a substantial foundation and would tend to aid the trier of fact

in its search for the truth.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928

(10th Cir. 2004).  To establish that the proffered testimony is reliable, the reasoning or

methodology underlying the testimony must be valid and must be properly applied to

the facts in issue.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–94

(1993) (listing four factors relevant to assessing reliability: (1) whether the theory has

been tested; (2) whether the theory has been subject to peer review and publication; (3)

2

the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance).

While an expert witness's testimony must assist the jury to be deemed admissible, Fed. R. Evid. 702(a), it may not usurp the jury's fact-finding function.  *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).  The line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, but it is well-settled that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704.

Ultimately, "the rejection of expert testimony is the exception rather than the rule."  Fed. R. Evid. 702 advisory committee's note.  "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Id.*

## B.   Analysis

Plaintiff moves to exclude the following opinions of Defendant's urology expert, Dr. Brian J. Flynn: (1) the "small" nature and "garden-variety" chemical composition of the kidney stones Plaintiff passed; (2) Plaintiff's kidney stones were not life-threatening and caused no permanent physical damage; (3) there was no need for a patient in Plaintiff's condition to go to a hospital emergency room ("ER") or be seen internally because there was no recommended intervention beyond ibuprofen that would have been provided in the ER; (4) the wait time for a kidney stone patient in the ER at

University Hospital would have been approximately 4–6 hours; and (5) most patients with a chronic history of kidney stones will pass them naturally at home without any intervention.  (ECF No. 250.)

    1.   <u>Nature of Kidney Stones</u>

    Plaintiff seeks to preclude Dr. Flynn from introducing into evidence his opinion that the kidney stones Plaintiff passed were "small," and that the chemical composition was "garden-variety."  (ECF No. 250 at 6–7.)  Plaintiff first argues that, as a factual matter, Dr. Flynn's analysis of the kidney stone collected during Plaintiff's appointment might not have been definitive because Plaintiff could have passed another stone, and because the stone might have broken apart during passage.  (*Id.* at 6.)  Plaintiff also argues that these opinions are irrelevant to the instant case, because Dr. Flynn admits that these characteristics of the kidney stones are not related to the severity of the pain Plaintiff alleges to have suffered here.  (*Id.* at 6–7.)

    The Court rejects Plaintiff's first argument, as it provides no basis to exclude the testimony.  These are merely disputes of fact that the jury must resolve, and Plaintiff may raise them in cross-examination for the jury's consideration.  As to Plaintiff's second argument, the Court disagrees that the nature of the kidney stones Plaintiff passed is irrelevant.  Federal Rule of Evidence 401 instructs that evidence is relevant if it has "any tendency" to make a fact of consequence more or less probable.  Dr. Flynn's assessment of the nature and type of the kidney stones at issue here informs his opinion of the seriousness of Plaintiff's medical condition, which is the first analytical prong of Plaintiff's Eighth Amendment claim.  *See Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (first prong requires a showing that plaintiff's medical need was

"'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause" (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))).  The fact that Plaintiff here intends to show that his medical need was serious because of the severe pain he endured, rather than because of any medical complication from his kidney stones, does not make irrelevant Dr. Flynn's testimony with respect to his evaluation and opinion that Plaintiff's medical condition was non-serious.

The Court finds that Plaintiff has failed to show that these opinions must be excluded.  The Motion to Exclude is therefore denied as to this evidence.

### 2.   Not Life-Threatening and No Permanent Damage

Plaintiff challenges Dr. Flynn's opinions that his kidney stones were not life-threatening and that he suffered no permanent damage or infection to his urinary tract or kidneys, arguing that these opinions are irrelevant and would be confusing to the jury because they might wrongly suggest that these consequences are necessary to prove Plaintiff's claim.  (ECF No. 250 at 8, 11–12.)

As with Dr. Flynn's opinions about the nature of the kidney stones, these opinions are relevant to Dr. Flynn's evaluation of the seriousness of Plaintiff's condition which is essential to Plaintiff's claim.  The jury will be made well aware of the legal standard for an Eighth Amendment deliberate indifference claim, both because it will be clearly stated in the jury instructions, and because Plaintiff's counsel will undoubtedly argue to the jury that these types of medical consequences are not required to prove a claim alleging an intermediate injury.  (*See id.* at 12.)  As such, the Court finds that the risk of jury confusion from the introduction of these opinions is minimal, and the opinions need not be excluded.  *See* Fed. R. Evid. 702 advisory committee's note

5

("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

> 3.    Need for ER or Internal Treatment and Intervention

Plaintiff seeks to exclude Dr. Flynn's opinion that Plaintiff's condition was of a type that typically does not require being sent to the ER, being seen internally by a medical provider, or any medical intervention beyond ibuprofen or other oral pain medication.  (ECF No. 250 at 8–11.)  Plaintiff raises several arguments that these opinions should be excluded, arguing that Dr. Flynn is not qualified to so opine because he is neither an expert on emergency medicine nor correctional medicine, that his opinions with respect to medical intervention are contradicted by Defendant's own testimony, and that the evidence is irrelevant because Plaintiff here alleges that he suffered severe pain and feared he might die, not that he needed to be taken to the ER. (*Id.*)

The Court rejects Plaintiff's argument that Dr. Flynn is not qualified to opine on the need for emergency treatment of a patient with kidney stones like Plaintiff's because he is not an expert on emergency medicine, for substantially the same reasons as it rejected Defendant's similar argument against Plaintiff's expert:

> To the extent that this argument suggests that a licensed physician may not offer an expert opinion regarding any medical condition for which there exists a specialty, the Court disagrees.  The Federal Rules of Evidence require only that the proposed expert witness be qualified "by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702. . . .  [T]he Court declines to rule that a medical doctor may not testify about a medical question falling into his general purview.

6

(ECF No. 202 at 4.)  Dr. Flynn has treated kidney stone patients in the ER and, based on his expertise in urology and his professional experience, he may opine as to the typical treatment needs of a patient suffering from a typical kidney stone, including whether such treatment requires emergency care.  This opinion is further based on Dr. Flynn's evaluation of the kidney stones at issue here, and is relevant to the issue of the seriousness of Plaintiff's condition.  It is therefore admissible.  Of course, this does not preclude Plaintiff from cross-examining Dr. Flynn at trial regarding the strength of his credentials and his experience with emergency medicine in order to sway the jury regarding the weight to be accorded his testimony.  *See Lovato v. Burlington N. & Santa Fe Ry. Co.*, 2002 WL 1424599, at *4 (D. Colo. June 24, 2002) ("Whatever shortcomings [the defendant] may perceive in [the expert's] academic or professional background are more properly addressed in cross-examination.  [The defendant's] challenge to [his] qualifications go to the weight of the witness's testimony, and not to its admissibility.").

Dr. Flynn's opinions regarding the likely scope of medical intervention in an emergency setting for a typical kidney stone patient are also admissible.  Dr. Flynn has provided such ER treatment and is qualified to testify based on his experience and expertise.  The Court rejects Plaintiff's argument pointing to conflicts between Dr. Flynn's opinions and Defendant's contrary testimony, as these are disputes of fact for the jury's resolution, not a basis to exclude the opinion.  Plaintiff argues he is not required to prove that he would have received any further medical intervention than ibuprofen, and that the jury might take Dr. Flynn's opinion to indicate otherwise.  (ECF No. 250 at 10–11.)  However, Plaintiff ignores the relevance of this opinion to the Eighth

Amendment analysis requiring that, where the serious medical need he claims is pain and suffering, he must show that the delay in treatment "unnecessarily prolonged [his] pain and suffering." *Sealock*, 218 F.3d at 1210 n.5.  Dr. Flynn's opinion is relevant to the question of how much the delay in treatment aggravated or worsened the pain and suffering Plaintiff would have felt even with prompt medical attention.  Accordingly, this opinion is probative and admissible.

However, Dr. Flynn's opinion that Defendant did not need to be seen internally in the prison by a medical provider must be excluded.  Because it was not known that Plaintiff was suffering from kidney stones until he passed a stone on October 6, 2008, the question of whether he needed to be seen internally is not a question of the treatment of a typical kidney stone patient (as with the ER opinions above), but rather a question of how a prisoner's complaints of certain symptoms should be handled in the prison environment.  In contrast to Dr. Flynn's general experience with emergency care for kidney stone patients, Dr. Flynn has no experience with primary care in a correctional facility, nor is such treatment within the general purview of every licensed medical doctor.  Furthermore, this opinion is misleading because it assumes that a diagnosis was made on which a course of treatment, or a decision not to treat, could be based, which is contrary to the facts of this case.  The Court finds that the minimal relevance of this opinion is substantially outweighed by the dangers of misleading the jury, and unfairly prejudicing Plaintiff as a result.  Accordingly, this opinion is excluded pursuant to Rule 403.

4.   <u>Wait Time in ER at University Hospital</u>

Plaintiff argues that Dr. Flynn's opinion that he would have had to wait 4–6 hours in the University Hospital ER should be excluded because he is unqualified to so opine, and the opinion is not helpful to the jury because it is divorced from the circumstances of this case.  (ECF No. 250 at 13–14.)  Defendant contends that Dr. Flynn is qualified and has ER experience, and argues that University Hospital may be offered as an example of typical wait times Plaintiff might have experienced.  (ECF No. 253 at 14 n.3.)

As to Dr. Flynn's qualifications with respect to emergency medicine, the Court has rejected that argument above.  However, the Court agrees with Plaintiff that this opinion is minimally probative and misleading because the example Dr. Flynn uses is completely disconnected to any possible course of events in this case.  Unlike the opinions regarding the level of emergency or typical ER course of treatment, Dr. Flynn's opinion of the wait time in the University Hospital ER for a typical kidney stone patient is not related to Dr. Flynn's evaluation of the severity of the condition.  At best, this opinion is evidence of how typical kidney stone symptoms might be treated by ER triage staff.  This opinion is unhelpful to the jury because no such determination was involved in this case.  Instead, Plaintiff's claim challenges Defendant's actions "as a gatekeeper for other medical personnel capable of treating the condition, and if [s]he delays or refuses to fulfill that gatekeeper role . . . [s]he also may be liable for deliberate indifference from denying access to medical care."  *Sealock v*, 218 F.3d at 1211.  Dr. Flynn's opinion may not be used to prove that Defendant's actions and omissions as a medical "gatekeeper" were not unconstitutional in comparison to a hypothetical ER triage staff person.

9

Accordingly, the probative value of this evidence is substantially outweighed by the danger of misleading the jury, and this evidence is properly excluded under Rule 403.

     5.    <u>Chronic Kidney Stone Patients Pass Naturally</u>

Finally, Plaintiff moves to exclude Dr. Flynn's opinion, as expressed in his expert report, that "most patients with a chronic history of kidney stones will pass these stones naturally in the home environment without any medical intervention." (ECF No. 250-1 at 2.) Plaintiff points out that this opinion is pertinent to a patient with a "chronic history" of kidney stones, suggesting that such a patient would have some idea of the source of his pain, in contrast to the facts of this case where Plaintiff's kidney stones were undiagnosed and he had no chronic history. (ECF No. 250 at 12–13.) Defendant does not respond directly to this argument. (*See* ECF No. 253.)

To the extent that Dr. Flynn opines generally about the course of treatment and experience of typical kidney stone patients, he may express that opinion with respect to the level of medical intervention such patients normally seek. As discussed above, these general opinions regarding kidney stone treatment are relevant to the seriousness of Plaintiff's condition. However, the Court agrees with Plaintiff that the reference to patients with a chronic history of kidney stones is minimally probative and misleading, both because Plaintiff did not have such a chronic history, and because a chronic history implies prior diagnosis, which is also contrary to the facts here. As such, this evidence is excludable under Rule 403. Dr. Flynn may not testify with respect to patients with a chronic history of kidney stones, but may testify as to the typical experiences of general kidney stone patients without such history.

10

## II.  PLAINTIFF'S MOTION *IN LIMINE*

Plaintiff moves to exclude eighteen different types of evidence, which Defendant groups into categories based on her arguments against their exclusion.  (ECF No. 263.) The Court will discuss each category of evidence in turn.

### A.   Convictions

Plaintiff moves to exclude evidence of his own convictions (felony unlawful sexual contact, criminal extortion, and theft, and misdemeanor false imprisonment), his sex offender treatment or lack thereof, and the prior felony convictions of two of his witnesses, Jason Steele and Samba Kane.  (ECF No. 263 at 3–5, 10-11.)  Defendant argues that all of the felony convictions are admissible under Federal Rule of Evidence 609(a)(1)(A), and that Plaintiff's sex offense is also admissible as a crime of dishonesty under Rule 609(a)(2).  (ECF No. 287-1 at 1–2.)

The Court is not persuaded by Defendant's argument that the particular factual circumstances of Plaintiff's convictions make them crimes of dishonesty within the meaning of Rule 609(a)(2).  (*See id.* at 2–3.)  That rule requires the admission of evidence where "the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2).  Even taking as true Defendant's assertion that Plaintiff's offense here involved deceiving his victim by offering her employment at his residence and then falsely imprisoning her and subjecting her to unlawful sexual contact, theft, and extortion, Defendant has provided no evidence from which the Court can "readily determine" that "the elements of the crime required proving" dishonesty, nor is there

11

any indication that the crime necessarily involved intentional deception rather than, *e.g.*, choosing to target the victim once she was employed at Plaintiff's residence. Accordingly, the Court finds that Rule 609(a)(2) does not apply here.  However, the provisions of Rule 609(a)(1) may still apply.

Rule 609(a)(1) requires the admission of evidence of a witness's criminal conviction for the purposes of impeaching credibility where the conviction was punishable by death or imprisonment for more than one year, subject to Rule 403.  As all of the felony convictions at issue here fall within the scope of Rule 609(a)(1), they are all presumptively admissible for purposes of impeachment.  Furthermore, the fact that Plaintiff's claim challenges the medical care he received while incarcerated necessarily involves disclosing to the jury that he was convicted of a crime meriting incarceration.

Plaintiff argues that his convictions are not relevant and cites the general Rule 403 standard, but makes no specific argument regarding unfair prejudice except with respect to his sex offender status.  (ECF No. 263 at 3–4.)  In that respect, Plaintiff argues that the term "sex offender" elicits negative connotations that are highly prejudicial and inflammatory, which run a high risk of improperly influencing the jury. (*Id.* at 4–5.)  The Court agrees with Plaintiff that references to a sex offense carry a high risk of unfair prejudice and have minimal probative value, particularly considering that the evidence of two additional felonies with identical probative value carry no such prejudice.  Therefore, all references to the nature of the sex offense conviction and sex offender treatment will be excluded pursuant to Rule 403.  However, the existence of Plaintiff's three felony convictions is admissible for purposes of impeachment.

Beyond the "crime of dishonesty" argument which the Court has rejected above, Defendant does not contend that Plaintiff's misdemeanor conviction for false imprisonment is admissible, and Rule 609(a)(1) does not apply to a misdemeanor conviction.  Because this conviction has no relevance to this action except to impeach Plaintiff's credibility, and the evidence of Plaintiff's felony convictions already serve that purpose, the Court concludes that evidence of Plaintiff's misdemeanor conviction is inadmissible under Rule 403.

As to the criminal convictions of Mr. Steele and Mr. Kane, Plaintiff admits that each was convicted of numerous felonies, and does not argue that either was released from incarceration more than ten years ago with respect to any of these crimes.  *See* Fed. R. Evid. 609(b) (limiting admissibility where more than ten years have passed "since the witness's conviction or release from confinement for it, whichever is later"). Plaintiff references Rule 403, but makes no argument specifying any unfair prejudice. (ECF No. 263 at 10–11.)  Accordingly, the Court finds that Mr. Steele's and Mr. Kane's felony convictions are admissible for purposes of impeachment under Rule 609(a)(1).

## B.      Plaintiff's Mental State and Vexatious Litigation

Plaintiff argues that the following categories of evidence should be excluded as irrelevant and unfairly prejudicial: (1) Plaintiff's transfer from state to federal custody; (2) Plaintiff's wife's criminal convictions; (3) unrelated grievances and administrative proceedings Plaintiff filed in prison; (4) the prison's denial of certain reading materials to Plaintiff; (5) other lawsuits involving Plaintiff during his incarceration; (6) Plaintiff's immigration status; and (7) Plaintiff's source of financial support.  (ECF No. 263.)  As to all of these, Defendant argues that they are admissible because they either relate to

13

Plaintiff's mental state after the Incident (which is relevant to the amount of suffering or trauma resulting from the Incident, affecting possible damages), or because they support Defendant's theory that Plaintiff is a vexatious litigant whose purpose in filing this case is to create a hassle for the Department of Corrections ("DOC") in order to obtain earlier release.  (ECF No. 279 at 3–5.)

The Court agrees with Defendant that evidence of Plaintiff's mental state in the aftermath of the Incident is relevant to the level of his suffering and his possible damages, and that such evidence may take the form of unrelated concerns reflecting a lack of such suffering, or unrelated stressors that might have augmented his suffering. In particular, Plaintiff's participation in prison grievances or other lawsuits shortly after the Incident may indicate lesser trauma if Plaintiff was not dwelling on the Incident and had moved on to other concerns.  As such, the Court holds that evidence of grievances and legal proceedings are admissible for this purpose to the extent that they occurred or were pursued within 60 days of the Incident.  However, after this time period, their probative value for this purpose is diminished; it is not indicative of a lack of severe pain and suffering on one particular occasion that the individual who suffered such pain is concerned with other legal matters some two months later.  While the fact of Plaintiff's involvement in other unrelated legal proceedings after this time may be relevant to Defendant's theory that Plaintiff was a vexatious litigant, the content of such proceedings is not, and is highly likely to distract the jury and derail the presentation of evidence.  As such, the Court holds that evidence of Plaintiff's grievances and other legal matters is admissible to prove Plaintiff's mental state within 60 days of the Incident, after which only the existence of unrelated proceedings, and not evidence of

14

their content beyond their lack of relation to this matter, may be admitted.

As to the other categories of evidence challenged here, the Court disagrees with Defendant's assertion that their probative value is sufficient as not to be substantially outweighed by the danger of unfair prejudice, confusing or misleading the jury, or wasting time. *See* Fed. R. Evid. 403. Beyond conclusory assertions of relevance, Defendant makes no substantive argument as to how many of these types of evidence—such as Plaintiff's immigration status—would be relevant to Plaintiff's mental state; indeed, Defendant even admits that Plaintiff's wife's crimes are "most likely irrelevant."[1]

The Court agrees with Plaintiff that his wife's convictions, his immigration status, and his transfer to federal custody in the wake of media coverage regarding the murder of Tom Clements have so little relevance that their probative value is easily and substantially outweighed by the Rule 403 dangers. Each of these categories of evidence will likely mislead the jury into considering immaterial issues, thereby wasting time and prejudicing Plaintiff with the negative implications of this unrelated evidence. As to Plaintiff's receipt of financial support from the Saudi government, Defendant has made no argument that this evidence provides any support for her theory that Plaintiff is a vexatious litigant or that it is otherwise relevant to the issues in this case, and the Court concludes that it must be excluded due to the substantial risk of confusing the

---

[1] Defendant also argues that the fact of Plaintiff's wife's deportation is relevant to demonstrating other sources of Plaintiff's emotional distress. (ECF No. 279 at 3–4.) However, Plaintiff did not move to exclude evidence of his wife's deportation, only of the allegations and charges against her and her convictions. (*See* ECF No. 263 at 5.) Accordingly, the Court makes no ruling at this time as to evidence of Plaintiff's wife's deportation.

issues and unfairly prejudicing Plaintiff.  The Court consequently excludes this evidence under Rule 403.

### C.   Witnesses' Status as Former Defendants

Plaintiff next moves to preclude reference at trial to the fact that certain of his witnesses were formerly defendants in this action.  (ECF No. 263 at 11–12.)  He contends that evidence relating to the Court's prior ruling granting qualified immunity to many of these former defendants would be unduly prejudicial.  (*Id.* at 12.)

Defendant states that she has no intention of introducing evidence of the procedural or legal specifics of the Court's Order Granting Summary Judgment, but nonetheless argues that these former defendants' status as such is admissible because it may show potential bias for purposes of impeachment.  (ECF No. 287-1 at 5.)  By way of example, Defendant states that she may wish to cross-examine former defendant David Maggard regarding inconsistencies between his report of the Incident and his deposition testimony, and that "the jury should be permitted to know of this key potential source of bias."  (*Id.*)

However, Defendant does not explain—and the Court cannot discern from her Response—what sort of bias would be present here.  Pointing out inconsistencies in prior testimony constitutes impeachment even without any reference to a former defendant's status as such.  If Plaintiff had settled his claims against these former defendants and Defendant sought to show that they now had an interest in maintaining his good will, that might suggest bias in favor of Plaintiff, but no such facts exist here. Instead, these witnesses were granted qualified immunity when this Court ruled *against*

Plaintiff.  (*See* ECF No. 201.)  Defendant fails to explain how their testimony will now be biased against her as a result of such ruling.

The Court finds that this evidence is largely irrelevant and carries a risk of confusing the issues.  Therefore, the Court grants Plaintiff's Motion to exclude this evidence, as Defendant has failed to identify any permissible use for it.

## D.   Currently Irrelevant Topics

Plaintiff moves to exclude numerous other topics, all of which Defendant argues "may or may not be relevant, but exclusion is premature" (ECF No. 287-1 at 6): (1) allegations that Plaintiff has ties to terrorism or was at all connected to the murder of then-DOC director Tom Clements; (2) allegations that Plaintiff has ties to a security threat group; (3) evidence related to Plaintiff's publishing business; (4) evidence of the length of time Plaintiff spent pursuing his Ph.D.; and (5) evidence of an internet post written by Plaintiff's nephew on a website devoted to his defense.  (ECF No. 263 at 1–3, 5–6, 8–9.)  Defendant "concedes that the evidence adduced at trial *could* lead to the conclusion that they are irrelevant or outweighed by prejudice . . . .  But excluding all mention of these topics before trial would be premature, both because of the topics' potential relevance to Plaintiff's mental state, and because it is easy to imagine Plaintiff opening the door . . . ."  (ECF No. 287-1 at 6.)

Defendant may not oppose an evidentiary motion asserting that certain topics are irrelevant and highly prejudicial by claiming that a basis for relevance could conceivably rear its head.  Nothing Defendant argues in her Response cures the prejudice that would result from many of these topics' introduction into evidence.  The danger of prejudice from these categories of evidence is extremely high: the jury might

17

improperly assume that Plaintiff is a terrorist or member of a security threat group, that he was involved in the murder of Mr. Clements, and that his publishing business and Ph.D. were merely a front for support to terrorists.  None of these issues are relevant to Plaintiff's claim in the instant matter, and the risk of unfair prejudice easily and substantially outweighs the nebulous, ineffable possibility of relevance that Defendant proposes might exist, making this evidence excludable under Rule 403.

As to the evidence of Plaintiff's nephew's internet post, Plaintiff states that this issue was raised in his deposition by Defendant's counsel, who suggested that the internet post communicated the true motive for Plaintiff's claims here: to force the state to incur expenses that would pressure them into releasing him on parole.  (ECF No. 263 at 5.)  Plaintiff argues that this evidence is hearsay and Plaintiff lacks personal knowledge of it.  (*Id.* at 5–6.)  Defendant's Response contends that Plaintiff's nephew's internet post provides support for her theory that Plaintiff is merely a vexatious litigant, but does not defend against the hearsay allegation.  (ECF No. 287-1 at 6.)  The Court finds that, assuming the author of this internet post does not testify at trial, this evidence is inadmissible hearsay and is excludable under Rule 802.

### E.    Attorneys' Fees and Gang Affiliations

Finally, Plaintiff moves to exclude evidence that his counsel could recover attorneys' fees if he prevails in this action, as well as any evidence of his witnesses' aliases or gang affiliations.  (ECF No. 263 at 7, 11.)  Defendant agrees to the exclusion of both of these categories of evidence.  (ECF No. 287-1 at 6.)

The Court agrees with the parties that the potential for attorneys' fees is inadmissible as unduly prejudicial under Rule 403, and that the aliases or gang

18

affiliations of Plaintiff's witnesses are irrelevant and inadmissible under Rule 402. Accordingly, this evidence will be excluded.

## II. DEFENDANT'S MOTION *IN LIMINE*

Defendant moves to exclude four categories of evidence: (1) hypothetical medical scenarios that could have caused Plaintiff's symptoms; (2) evidence of Defendant's feelings and motives about interactions with inmates; (3) third parties' opinions regarding whether Defendant violated protocols of the DOC or other policies; and (4) subsequent remedial measures and employee discipline.  (ECF No. 265.) Plaintiff filed a Response as to each of these categories.  (ECF No. 277.)  The Court will discuss each category of evidence in turn.

### A.    Hypothetical Medical Scenarios

Defendant seeks to exclude evidence of alternative hypothetical medical scenarios that could conceivably have resulted from Plaintiff's reported symptoms. (ECF No. 265 at 2–3.)  Defendant argues that Plaintiff's claim must be based on the actual injury he suffered, not the hypothetical appendicitis, bowel obstruction, pancreatitis or peritonitis that might alternatively be the cause of abdominal pain.  (*Id.*)

The Court agrees that there is some risk of jury confusion from the presentation of evidence regarding medical conditions that Plaintiff does not have, but that risk does not substantially outweigh the highly probative value of this evidence with respect to the subjective prong of the Eighth Amendment deliberate indifference analysis.  The subjective prong examines the state of mind of the defendant, asking whether "the official knows of and disregards an excessive risk to inmate health or safety."  *Farmer*,

19

511 U.S. at 837.  Under this prong, a defendant must know of a substantial risk of harm and disregard it, such that a defendant who "actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844–45.

As applied to the instant case, evidence that Defendant knew of medical conditions that can cause the symptoms of which Plaintiff complained is relevant to demonstrating whether Defendant actually knew of a substantial risk of harm to Plaintiff. This question is essential to determining whether Plaintiff has satisfied the subjective prong of the Eighth Amendment analysis, and thus these alternative possible medical conditions are highly relevant to the claim at issue.  The jury will be well-instructed on the elements of the Eighth Amendment deliberate indifference claim, and the Court has no doubt that Defendant's counsel will emphasize that none of these medical conditions was actually suffered by Plaintiff, reducing the likelihood of jury confusion.  Therefore, the Court finds that Rule 403 does not require the exclusion of this evidence, and Defendant's Motion is denied in that respect.

**B.     Defendant's Feelings About Inmates**

Defendant moves to preclude the introduction of evidence relating to her alleged discomfort and/or fear of the inmates at the prison, arguing that such testimony is speculative and unsupported.  (ECF No. 265 at 3–4.)  Specifically, Defendant cites testimony of DeeAnne Kahler, the Health Service Administrator for the DOC who worked with Defendant, and who testified that Defendant was "not comfortable with the offenders" and was reluctant to see them during the night.  (*Id.*)  Defendant notes that, when asked, Ms. Kahler could identify no facts or specific instances that led to this

impression of Defendant.  (*Id.* at 4.)

In response, Plaintiff argues that Ms. Kahler's impression of Defendant is admissible as based on her personal knowledge through observing Defendant, and is otherwise admissible as lay opinion under Rule 701, because she stated that her impression was based on "interactions with [Defendant], knowing her, watching her, [and] being around the clinic." (ECF No. 277 at 3.)  Plaintiff argues that the evidence is highly probative of Defendant's motives and state of mind during the Incident. However, Plaintiff does not respond to Defendant's argument that Ms. Kahler could cite no specific incidents underlying her testimony, or any particular facts on which her opinion of Defendant was based.

The Court finds this evidence relevant to Defendant's state of mind at the time of the Incident, but its probative value is extremely limited due to Ms. Kahler's failure to cite any examples or occurrences in support of her lay opinion.  The Court also agrees with Defendant that such testimony carries a high risk of unfairly prejudicing Defendant under Rule 403, and could also shade into improper character evidence under Rule 404.  As a result, the Court finds that the unsupported evidence from Ms. Kahler's testimony of Defendant's fear or discomfort with inmates is inadmissible.

**C.     DOC Protocol and Policy**

Defendant seeks to exclude evidence of her alleged violation of DOC protocol or policy, which may be introduced through prison Warden Travis Trani, Deputy Director of Prisons Joan Shoemaker (a Rule 30(b)(6) witness for DOC), Dr. Anita Bloor, and Ms. Kahler.  (ECF No. 265 at 5–7.)  Defendant argues that this evidence is constituted primarily of third-party opinions of individuals who did not witness the events in

question, "most likely including a good deal of hearsay," and evaluates Defendant's conduct based on DOC policies rather than the Eighth Amendment legal standard applicable here, risking misleading the jury and prejudicing Defendant.  (*Id.*)

With respect to Defendant's hearsay argument, Defendant's Motion fails to identify any particular item of evidence that is hearsay.  (*See id.*)  Accordingly, the Court rejects this argument without prejudice to Defendant reasserting it at trial against a particular item of evidence with an identified declarant.

As to the argument that Defendant's actions may not be judged based on her alleged failure to comply with DOC protocol, Plaintiff argues in response that the Tenth Circuit explicitly permits a jury to consider violation of DOC protocols in evaluating the subjective prong of the Eighth Amendment test.  (ECF No. 277 (quoting *Mata*, 427 F.3d at 758 ("[T]he DOC protocol mandating that [the defendant] treat severe chest pain as a cardiac symptom constitutes circumstantial evidence of her knowledge of the seriousness of such pain.")).)  The *Mata* Court found that the defendant's failure to follow required protocols or otherwise attempt to assist the plaintiff was evidence on which a reasonable jury could rely in support of a finding that the plaintiff suffered unnecessary pain for several additional hours that did not serve any penological purpose, in violation of the Eighth Amendment.  427 F.3d at 758.

The parties have not described every item of evidence regarding Defendant's alleged violation of DOC protocol, and thus the Court cannot definitively conclude that all are necessarily admissible.  Nevertheless, under *Mata*, the Court rejects Defendant's argument that evidence of a potential violation of DOC protocol is not inadmissible merely because such protocol may differ from the Eighth Amendment standard, and the

22

probative value of such evidence is sufficient that it is not substantially outweighed by the Rule 403 dangers.  As such, the Court denies Defendant's Motion as to that evidence.

**D.     Subsequent Remedial Measures and Employee Discipline**

Defendant's Motion seeks the exclusion of two final categories of evidence: subsequent remedial measures, and Defendant's employment performance and disciplinary history (both related and unrelated to the Incident).  (ECF No. 265 at 5, 7–8.)

Plaintiff agrees to Defendant's Motion seeking the exclusion of any evidence of subsequent remedial measures taken by DOC after the Incident (*see* ECF No. 277 at 3), and the Court finds such exclusion appropriate pursuant to Rule 407.  Fed. R. Evid. 407 ("When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove * * * culpable conduct . . . . But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.").

However, Plaintiff does not agree to the exclusion of the evidence of Defendant's performance or discipline as a DOC employee.  (ECF No. 277 at 4.)  Plaintiff's argument emphasizes the relevance of Defendant's subsequent employee counseling related to the Incident for purposes of showing Defendant's state of mind and motive underlying the challenged actions and omissions here, but Plaintiff fails to make any argument with respect to any evidence of Defendant's performance that is unrelated to the Incident.  (*Id.*)  Consequently, the Court finds that such unrelated performance

23

evidence is inadmissible as irrelevant.  Fed. R. Evid. 402.

As to the employee performance or discipline evidence related to the Incident, the Court first notes that neither party has cited any authority for its argument with respect to this evidence.  However, after review of the relevant case law, the Court concludes that evidence of employee discipline is akin to evidence of subsequent remedial measures, and should be excluded for the same reasons.  *See Specht v. Jensen*, 863 F.2d 700, 701 (10th Cir. 1988) (applying Rule 407 to exclude press release discussing disciplinary action it planned to take after incident); *Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584, 586–87 (10th Cir. 1987) (applying Rule 407 to exclude evidence of employer discipline and discharge after accident); *Rimkus v. Nw. Colo. Ski Corp.*, 706 F.2d 1060, 1064 (10th Cir. 1983) ("Rule 407 is broad enough to cover such diverse situations as the discharge of the employee responsible for the accident") (citing 2-407 Weinstein's Federal Evidence § 407.02).  The Court rejects Plaintiff's argument that this evidence should be admitted to prove motive or state of mind, as DOC's post-Incident actions to discipline or counsel Defendant provide no insight into Defendant's thinking at the time of the Incident.

In the absence of any purpose for which this evidence might be permissibly admitted, the Court concludes that it must be excluded pursuant to Rule 407.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.   Plaintiff's Motion to Exclude Certain Opinions of Defendant's Urology Expert (ECF No. 250) is GRANTED IN PART and DENIED IN PART;

2.      Dr. Brian J. Flynn, M.D., may testify at trial as outlined in and consistent with this Order;

3.      Plaintiff's Motion *in Limine* (ECF No. 263) and Defendant's Motion *in Limine* (ECF No. 265) are each GRANTED IN PART and DENIED IN PART; and

4.      The following evidence shall be EXCLUDED at trial, as further detailed herein:

     a.     Dr. Flynn's opinion that Defendant did not need to be seen internally by a medical provider;

     b.     Dr. Flynn's opinion that Defendant would have had to wait 4–6 hours to be seen at the University Hospital ER;

     c.     Dr. Flynn's opinion regarding patients with a chronic history of kidney stones;

     d.     Plaintiff's misdemeanor conviction, as well as any reference to his sex offense or sex offender treatment;

     e.     The content of Plaintiff's unrelated prison grievances, administrative proceedings, and lawsuits more than 60 days from the Incident;

     f.     Plaintiff's wife's convictions;

     g.     Plaintiff's immigration status;

     h.     Plaintiff's transfer to federal custody and the reasons therefor;

     i.     Plaintiff's receipt of financial support from the Saudi government;

     j.     Witnesses' status as former defendants in this case;

     k.     Allegations that Plaintiff is connected to terrorism, a security threat group, or the murder of DOC Director Tom Clements;

     l.     Plaintiff's publishing business;

m.   The amount of time Plaintiff pursued his Ph.D.;

n.   An internet post purportedly written by Plaintiff's nephew regarding

Plaintiff's motives for the instant claims;

o.   The possibility Plaintiff may recover attorneys' fees;

p.   Witnesses' aliases, nicknames, or gang affiliations;

q.   Ms. Kahler's testimony regarding Defendant's fear of or discomfort with

inmates;

r.   Subsequent remedial measures; and

s.   Defendant's employee counseling or discipline, both related and unrelated

to the Incident.

Dated this 27th day of October, 2015.

BY THE COURT:

_____
William J. Martinez
United States District Judge